580                                     458 Mass. 580 (2010)

Morrissey *v.* New England Deaconess Association — Abundant Life Communities, Inc.

JOHN N. MORRISSEY, trustee,[1] *vs.* NEW ENGLAND DEACONESS
ASSOCIATION — ABUNDANT LIFE COMMUNITIES, INC.,
& others[2]; MAROIS BROS., INC., third-party defendant.

Middlesex. November 2, 2010. - December 22, 2010.

Present: IRELAND, SPINA, CORDY, BOTSFORD, & GANTS, JJ.

*Massachusetts Tort Claims Act. Commonwealth,* Claim against. *Jurisdiction,*
Claim against Commonwealth. *Governmental Immunity. Waiver. Nuisance.
Statute,* Construction. *Practice, Civil,* Retroactivity of judicial holding,
Appeal.

This court concluded that tort claims for private nuisance that are brought
against the Commonwealth fall within the purview of the Massachusetts
Tort Claims Act, G. L. c. 258 [586-591]; further, this court concluded that
no exception was warranted from the general rule of retroactive application
of its holding [591-592].

In a civil action brought against the Commonwealth alleging that the Com-
monwealth issued a permit to the owner of land abutting the plaintiff's
property, allowing the making of specified improvements to a State highway,
and that the work caused noise, dust, vibrations and other damage to the
plaintiff's property that interfered with the plaintiff's use and enjoyment of
his property, the plaintiff's claim was barred by the express language of
G. L. c. 258, § 10 (*e*), an exception preserving sovereign immunity under
the Massachusetts Tort Claims Act as to claims based on, inter alia, the
Commonwealth's issuance of a permit [592-593]; moreover, where the
Commonwealth's issuance of the permit was a discretionary function, the
plaintiff's claim was also barred by G. L. c. 258, § 10 (*b*) [593-594].

This court declined to consider the arguments made by the plaintiff in a civil
action, challenging a judge's dismissal of several of the plaintiff's claims,
where the plaintiff failed to seek entry of separate and final judgment on
those claims pursuant to Mass. R. Civ. P. 54 (b). [594-595]

CIVIL ACTION commenced in the Superior Court Department on
December 17, 2007.

A motion to dismiss was heard by *Wendie I. Gershengorn*, J.

The Supreme Judicial Court granted an application for direct
appellate review.

---

[1] Of JNM 2006 Trust.

[2] Executive Office of Transportation and Public Works, and Delphi Construc-
tion, Inc.

*Howard R. Meshnick*, Assistant Attorney General, for Executive Office of Transportation and Public Works.

*John N. Morrissey*, pro se.

*David M. Moore*, City Solicitor, & *Andrew J. Abdella*, Assistant City Solicitor, for city of Worcester, amicus curiae, submitted a brief.

*Thomas J. Urbelis* & *Juliana deHaan Rice*, for City Solicitors and Town Counsel Association, amicus curiae, submitted a brief.

SPINA, J. In the present case, here on direct appellate review, we consider whether the tort of private nuisance falls within the purview of the Massachusetts Tort Claims Act (Act), G. L. c. 258, and, if so, whether such a claim brought by John N. Morrissey, on behalf of the JNM 2006 Trust, against, among others, the Executive Office of Transportation and Public Works (Commonwealth)[3] is barred by the exceptions to the waiver of sovereign immunity set forth in G. L. c. 258, § 10 (*b*) and (*e*). For the reasons that follow, we conclude that an action for private nuisance against the Commonwealth is subject to the provisions of the Act, and that Morrissey's claim, arising from certain construction activities on a State highway, is barred by statutory exceptions to the waiver of sovereign immunity.

1. *Background.* For the purposes of our review, we accept as true the allegations in Morrissey's amended complaint. See *Iannacchino* v. *Ford Motor Co.*, 451 Mass. 623, 636 (2008), quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555-556 (2007). Morrissey, as the attorney for and sole trustee of the JNM 2006 Trust, holds legal title to a six-acre property at 23 Cambridge Turnpike in Lincoln (Trust property), where Morrissey's father lives. The Trust property's only access to a public way is a driveway onto the Cambridge Turnpike, also known as Route 2, a State highway. New England Deaconess Association — Abundant Life Communities, Inc. (Deaconess), owns the land that abuts the Trust property. The primary means of vehicular access to the Deaconess property is a paved road along the side of its property that exits onto Route 2. Prior to the commencement of road

---

[3]On July 1, 2009, the Executive Office of Transportation and Public Works was integrated into the Department of Transportation. See St. 2009, c. 25 ("An Act modernizing the transportation systems of the Commonwealth").

work, Route 2 in the vicinity of the Trust and Deaconess proper-
ties was a four-lane undivided highway. It had a narrow break-
down or acceleration lane beginning at the exit of the Deacon-
ess property and continuing for approximately 700 feet in front
of the Trust property and the next two neighboring properties
before converging with the right-hand travel lane of Route 2.
The portion of the Trust property adjacent to Route 2 is relatively
level and is approximately eight feet above the road grade.

At some indeterminate time, Deaconess commenced construc-
tion of a senior living community on its property (The Groves).
In late summer and early fall of 2007, Deaconess met with the
Morrisseys about its plans to widen Route 2 to accommodate an
acceleration and deceleration lane for vehicular traffic entering
and exiting the Deaconess property. It presented several options
for the provision of lateral support to the Trust property during
the road construction. At a subsequent meeting, the Morrisseys
provided Deaconess with a list of conditions as to the performance
of the work and requested compensation of $50,000 to mitigate
the costs of the anticipated nuisance. Deaconess ultimately
decided that it would perform the road work by cutting back the
existing grass escarpment and finishing the sloped surface with
"riprap."[4] Because this method of construction did not require
an easement onto the Trust property, Deaconess informed Mor-
rissey that he had no right to input over any aspect of the project,
and that he would not be compensated for anticipated harm to
the Trust property, other than possibly the transplanting of certain
trees that might be affected by the road work.

On October 30, 2007, the Massachusetts Highway Department
(highway department) issued a permit to Deaconess to enter on
and make certain improvements to Route 2 in Lincoln.[5] The
permit allowed Deaconess, among other things, to widen the ac-
celeration and deceleration lane, perform associated drainage
work, install a guardrail, and construct a riprap escarpment. It
also imposed limitations on construction activities and required
that Deaconess indemnify the Commonwealth and the highway

---

[4]"Riprap" consists of stones piled against an embankment to prevent erosion.
See Webster's Third New Int'l Dictionary 1960 (1993).

[5]The Massachusetts Highway Department is now a division of the Depart-
ment of Transportation. See St. 2009, c. 25. See also note 3, supra.

458 Mass. 580 (2010) 583

Morrissey v. New England Deaconess Association — Abundant Life Communities, Inc.

department against all suits, claims, or liability arising from the work covered by the permit. Delphi Construction, Inc. (Delphi), hired by Deaconess to manage construction of The Groves, commenced work on Route 2 in late November, 2007.

The Morrisseys soon complained to Delphi that a portion of the completed riprap escarpment encroached onto the Trust property, that approximately six feet of the Trust property had collapsed into the excavated but unfinished portion of the escarpment, and that a construction fence had been installed on the Trust property without permission. Their demands that the work on Route 2 stop and that they be provided with monetary compensation were ignored. On April 7, 2008, Morrissey filed an amended verified seven-count complaint for monetary damages and injunctive relief against Deaconess, the Commonwealth, and Delphi (collectively, the defendants).[6] As pertinent to the present appeal, four counts were brought against the Commonwealth: interference with rights to lateral support (Count I); trespass to land (Count II); private nuisance (Count III)[7]; and inverse condemnation in violation of art. 10 of the Massachusetts Declaration of Rights (Count V).

On July 29, 2009, the Commonwealth filed a motion to dismiss "all claims against it" for lack of subject matter jurisdiction

[6]Delphi Construction, Inc., subsequently named Marois Bros., Inc., as a third-party defendant. Deaconess filed a cross claim against Delphi.

[7]Count III of Morrissey's amended complaint alleged more specifically as follows:

"47. Defendants' construction activities undertaken for improvements to Route 2 have caused and will cause substantial interference with the use and enjoyment and diminution in value of [Trust] Property primarily due to, but not limited by: increased noise, dust and vibration from the construction work; interference, both temporary, and permanently with access to [Trust] Property and other property rights.

"48. The Work if allowed to go forward as planned will cause a permanent and substantial interference with the use and enjoyment and diminution in value of [Trust] Property primarily due to, but not limited by: increased noise, dust and vibration; and interference, both temporary, and permanently with access to [Trust] Property and other property rights.

"49. Plaintiff will continue to suffer substantial and irreparable harm and damages unless Defendants are restrained and enjoined from continuing the Work affecting the escarpment at the boundary line between [Trust] Property and the state highway. In addition, Defendants have or will cause damages in an amount to be determined at trial."

pursuant to Mass. R. Civ. P. 12 (b) (1), 365 Mass. 754 (1974). The Commonwealth asserted that the sole basis for Morrissey's claims was the Commonwealth's discretionary decision to issue a permit for construction on Route 2. As such, his claims were barred by the exceptions to the waiver of sovereign immunity set forth in G. L. c. 258, § 10 (b) and (e), pertaining to the performance of a discretionary function and the issuance of a permit. In his opposition to the Commonwealth's motion, Morrissey stated that subject matter jurisdiction was conferred on the Superior Court pursuant to G. L. c. 79 (eminent domain) and G. L. c. 81, § 7 (compensation for injury to real estate caused by alteration of State highway), as well as under the common law of private nuisance and constitutional principles relating to the "taking" of private property.

On October 14, 2009, a judge in the Superior Court allowed the Commonwealth's motion to dismiss as to Counts I and II, and denied the motion as to Count III.[8] The judge concluded that Morrissey's private nuisance claim was not barred by the Act because G. L. c. 258 provided an unnecessary, and therefore inapplicable, remedy for a private nuisance action against a governmental entity, given that decades before the enactment of the Act, "it was well established that a municipality was not immune from liability if it created or maintained a private nuisance on its land which caused injury to the real property of another." *Murphy* v. *Chatham*, 41 Mass. App. Ct. 821, 824-825 (1996), quoting *Asiala* v. *Fitchburg*, 24 Mass. App. Ct. 13, 17 (1987).

In contrast, the judge further concluded that Morrissey's

---

[8]In its motion to dismiss, the Commonwealth did not specifically mention Count V (inverse condemnation), and the judge did not address that claim in her memorandum of decision and order. However, the judge did state that the Commonwealth "did not involve itself in the alteration of Route 2 by either controlling the work allegedly performed by Deaconess or Delphi Construction, Inc. or taking any portion of the Trust Property." Consequently, in its appeal, the Commonwealth asserted that the judge "substantively addressed and rejected the inverse condemnation claim (Count V)" in her memorandum of decision and order, but "inadvertently failed to mention the dismissal of Count V in the final Order." Immediately prior to oral argument before this court, Morrissey submitted a letter pursuant to Mass. R. A. P. 16 (l), as amended, 386 Mass. 1247 (1982), in which he stated that on October 25, 2010, a Superior Court judge allowed the Commonwealth's motion to clarify the earlier memorandum of decision and order on the Commonwealth's motion to dismiss, and that judge dismissed Count V of the amended complaint.

claims that the Commonwealth interfered with his rights to lateral support and trespassed onto the Trust property could not survive the motion to dismiss because the Commonwealth has not waived immunity with respect to claims based on a discretionary decision, the issuance of a permit, or an alleged failure to prevent or diminish harmful consequences that it did not originally cause. See G. L. c. 258, § 10 (*b*), (*e*), (*j*).[9] In addition, the judge stated that, contrary to Morrissey's contention, the court did not have jurisdiction over these claims pursuant to G. L. c. 81, § 7, because the Commonwealth "did not involve itself in the alteration of Route 2 by either controlling the work allegedly performed by Deaconess or Delphi Construction, Inc. or taking any portion of the Trust Property." Instead, the judge continued, the Commonwealth's only role in the alteration of Route 2 was its decision to issue a permit to Deaconess and, because Morrissey's claims against the Commonwealth for interference with his rights to lateral support and for trespass were based on this discretionary decision, these claims were barred by the exceptions to the waiver of sovereign immunity set forth in § 10. The Commonwealth appealed,[10] and we granted

[9]General Laws c. 258, § 10 (*j*), excludes public employers from liability for "any claim based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation, including the violent or tortious conduct of a third person, which is not originally caused by the public employer or any other person acting on behalf of the public employer." This immunity does not apply to "any claim based on negligent maintenance of public property." G. L. c. 258, § 10 (*j*) (3). Neither in its motion to dismiss nor in the present appeal has the Commonwealth argued that the exception to the waiver of sovereign immunity set forth in § 10 (*j*) applies to the factual allegations set forth in Morrissey's amended complaint. Accordingly, we do not consider the applicability of § 10 (*j*) to Morrissey's claims.

[10]"As a general rule, an aggrieved litigant cannot as a matter of right pursue an immediate appeal from an interlocutory order unless a statute or rule authorizes it." *Elles* v. *Zoning Bd. of Appeals of Quincy*, 450 Mass. 671, 673-674 (2008). "Consistent with this rule, the denial of a motion to dismiss is ordinarily not an appealable order." *Fabre* v. *Walton*, 436 Mass. 517, 521 (2002), *S.C.*, 441 Mass. 9 (2004). One of the limited exceptions to the rule is the doctrine of present execution, under which immediate appeal from an interlocutory order is permitted if the ruling is "collateral" to the merits of the underlying action and will interfere with rights in a way that cannot be remedied on appeal from a final judgment. See *McMenimen* v. *Passatempo*, 452 Mass. 178, 186 n.10 (2008); *Elles* v. *Zoning Bd. of Appeals of Quincy, supra* at 674. "[W]e have held that interlocutory orders relating to claims of government

586       458 Mass. 580 (2010)

Morrissey v. New England Deaconess Association — Abundant Life Communities, Inc.

its application for direct appellate review.[11]

2. *Inclusion of private nuisance in the Act.* The thrust of the Commonwealth's argument is that, when consideration is given to the genesis of the Act, as well as to its purposes and provisions, it becomes evident that the tort of private nuisance is encompassed within its purview. As such, the Commonwealth continues, in the circumstances of this case, Morrissey's claim is barred by the specific exclusions to the waiver of sovereign immunity set forth in G. L. c. 258, § 10 (*b*) and (*e*). We agree.

Prior to the enactment of the Act in 1978, the Commonwealth and its municipalities were not immune from liability with respect to claims for private nuisance. See *Morash & Sons* v. *Commonwealth*, 363 Mass. 612, 616-619 (1973) (*Morash*) (holding that where municipalities already were liable for private nuisances, there was no logical reason why Commonwealth should not also be liable where "it creates or maintains a private nuisance which causes injury to the real property of another"). However, recognizing that sovereign immunity was a "judicially created common law concept," *id.* at 615, which had precluded recovery in a wide variety of cases, see *id.* at 620, and that piecemeal exceptions to the doctrine had been created by judges to avoid unjust results, see *id.* at 623, we opined in *Morash, supra* at 623-624, and subsequently in *Whitney* v. *Worcester*, 373 Mass. 208, 212-213 (1977) (*Whitney*), that the Legislature should take action to abolish the common-law doctrine of governmental immunity from tort liability. If the Legislature declined to do so within a specified time frame, then this court would abrogate the doctrine when next presented with an appropriate case.[12] See

immunity from suit are subject to the doctrine because '[t]he right to immunity from suit would be "lost forever" if an order denying it were not appealable until the close of litigation . . . .' " *Id.*, quoting *Brum* v. *Dartmouth*, 428 Mass. 684, 688 (1999). See *Kent* v. *Commonwealth*, 437 Mass. 312, 315-317 (2002) (denial of motion to dismiss predicated on immunity provisions of G. L. c. 258 is immediately appealable under doctrine of present execution).

[11]We acknowledge the amicus briefs submitted by the city of Worcester and by the City Solicitors and Town Counsel Association in support of the Commonwealth.

[12]In *Whitney* v. *Worcester*, 373 Mass. 208, 219 n.11 (1977) (*Whitney*), this court pointed out that "[g]overnmental entities are already liable as private individuals in nuisance, and we would intend no change in such liability." This statement was made in the context of articulating "major principles which we intend to recognize *if and when* it becomes necessary for us so to

458 Mass. 580 (2010)                                    587

Morrissey *v.* New England Deaconess Association — Abundant Life Communities, Inc.

*Whitney, supra* at 210. See also *Irwin* v. *Commissioner of the Dep't of Youth Servs.*, 388 Mass. 810, 816-817 (1983).

As a consequence of this court's directive, the Legislature enacted the Act, thereby allowing plaintiffs with valid tort claims to recover damages against the Commonwealth and other public employers, subject to certain specified limitations.[13] See St. 1978, c. 512, § 15. See also *Wong* v. *University of Mass.*, 438 Mass. 29, 33-34 (2002) (discussing enactment of and amendments to Act); *Vasys* v. *Metropolitan Dist. Comm'n*, 387 Mass. 51, 57 (1982) (describing purposes of Act). By this statutory enactment, the Legislature sought to abolish "sovereign immunity and the crazy quilt of exceptions to sovereign immunity . . . which courts [had] stitched together."[14] *Rogers* v. *Metropolitan Dist. Comm'n*, 18 Mass. App. Ct. 337, 338-339 (1984). A second and equally important purpose of the Act was "to preserve the stability and effectiveness of government by providing a mechanism which [would] result in payment of only those claims against governmental entities which are valid, in amounts which are reasonable and not inflated." *Vasys* v. *Metropolitan Dist. Comm'n, supra*. See *Whitney, supra* at 216 ("An appropriate balance should be struck between the public interest in fairness to injured persons and in promoting effective government").

restructure the common law" (emphasis added). *Id.* at 212. However, it was this court's opinion that the Legislature should have the "final word" regarding the continued viability and scope of the existing governmental immunity doctrine, subject to a defined time frame for taking comprehensive legislative action. *Id.* at 210. See *Vaughan* v. *Commonwealth*, 377 Mass. 914, 915 (1979) (statement of future intent expressed in *Whitney* designed to take effect only if Legislature failed to act, not to modify law once established by comprehensive statute).

[13]It is not disputed that the Executive Office of Transportation and Public Works is a "[p]ublic employer" for purposes of the Act and is subject to its provisions. See G. L. c. 258, § 1.

[14]See, e.g., *Daley* v. *Watertown*, 192 Mass. 116, 118 (1906) (town liable for private nuisance where overflow of pond onto plaintiff's property was due to faulty drain constructed and maintained by selectmen acting as town's agents, not by superintendent of streets acting as public officer); *Lemasurier* v. *Pepperell*, 10 Mass. App. Ct. 96, 97-98 (1980) (town not liable for private nuisance where flooding of plaintiff's property was caused by raised culvert maintained by town's highway surveyor acting as public officer, not as agent). The distinction between acts of public officers and acts of town agents with respect to municipal liability was considered not to be a sound one. See *Whitney, supra* at 213-217; *Lemasurier* v. *Pepperell, supra* at 98.

As relevant herein, G. L. c. 258, § 2, provides, in pertinent part:

> "Public employers shall be liable for injury or loss of property . . . caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment, in the same manner and to the same extent as a private individual under like circumstances, except that public employers shall not be liable . . . for any amount in excess of one hundred thousand dollars. The remedies provided by this chapter shall be exclusive of any other civil action or proceeding by reason of the same subject matter against the public employer . . . . Final judgment in an action brought against a public employer under this chapter shall constitute a complete bar to any action by a party to such judgment against such public employer or public employee by reason of the same subject matter."

In essence, the Act was enacted to provide "a comprehensive and uniform regime of tort liability for public employers in the wake of our decisions" in *Morash* and *Whitney. Lafayette Place Assocs.* v. *Boston Redevelopment Auth.*, 427 Mass. 509, 534 (1998), cert. denied, 525 U.S. 1177 (1999).

In Count III of his amended complaint, Morrissey asserted a claim against the Commonwealth for private nuisance, alleging interference with the use and enjoyment of the Trust property. See note 7, *supra.* "A private nuisance is actionable when a property owner creates, permits, or maintains a condition or activity on [its] property that causes a substantial and unreasonable interference with the use and enjoyment of the property of another."[15] *Taygeta Corp.* v. *Varian Assocs.*, 436 Mass. 217, 231 (2002), quoting *Doe* v. *New Bedford Hous. Auth.*, 417 Mass.

---

[15] "It is difficult, if not impossible, to describe nuisance without reliance on concepts which are integrally related to negligence, intentional torts and strict liability." J.R. Nolan & L.J. Sartorio, Tort Law § 26.1, at 221 (3d ed. 2005). See Restatement (Second) of Torts § 822 (1979) (elements of liability for private nuisance). Liability for the maintenance of a nuisance, premised on allegations of interference with the use and enjoyment of land, "should be based upon a determination that the interference is intentional and unreasonable or results from conduct which is negligent, reckless or ultrahazardous." *Ted's Master Serv., Inc.* v. *Farina Bros. Co.*, 343 Mass. 307, 312 (1961). The term "nuisance" does not "per se bespeak absolute liability and it does not

273, 288 (1994). With the background to the enactment of the Act in mind, we turn to the specific question whether a private nuisance claim falls within the scope of G. L. c. 258. Some nine years after the Act's enactment, the Appeals Court was given the opportunity to consider this issue.

In *Asiala* v. *Fitchburg*, 24 Mass. App. Ct. 13, 14-15 (1987) (*Asiala*), a homeowner brought an action against the city alleging that it had created a private nuisance by negligently failing to construct and maintain a retaining wall along her property while doing road work, and that the nuisance was interfering with the reasonable and proper use of her land. The Appeals Court concluded that the city was not entitled to a directed verdict because the procedures and defenses of the Act did not apply to the homeowner's claim. See *id.* at 16-18. The court recognized that the Act "removed the defense of immunity in certain tort actions against the Commonwealth, municipalities and other governmental subdivisions," *id.* at 17, quoting *Dinsky* v. *Framingham*, 386 Mass. 801, 804 (1982), and thus provided "an effective remedy for persons injured as a result of the negligence of governmental entities in the Commonwealth." *Asiala*, *supra*, quoting *Vasys* v. *Metropolitan Dist. Comm'n, supra* at 55. However, the court stated that such a remedy was not necessary with respect to a private nuisance action against a municipality because, "[d]ecades before the enactment of the Act, it was well established that a municipality was not immune from liability if it created or maintained a private nuisance on its land which caused injury to the real property of another." *Asiala*, *supra*. "Therefore, when the Legislature abolished the doctrine of governmental immunity by enacting the Act, it was not necessary to abolish immunity with respect to private nuisance claims [because] [t]he removal of the doctrine had already been accomplished by judicial decision." *Id.* at 18. Accordingly, the homeowner's nuisance claim in *Asiala* was not barred by the fact that she had failed to comply with the notice requirements and time limitations set forth in the Act. See *id.* at 16, 18.

While the Appeals Court's interpretation of the common law prior to the enactment of the Act was accurate, the court did not

relieve the plaintiffs of the burden of showing that the conduct of the defendant was tortious within the abovestated principles." *Id.*

discuss the fact that the primary purpose of the Act was to replace the common-law doctrine of governmental immunity, and its myriad judicially created exceptions, with a comprehensive statutory scheme governing the tort liability of public employers.[16] See *Morash, supra* at 619, 623-624. In *Asiala,* the court stated that "[a] statute is not to be interpreted as effecting a material change in or a repeal of the common law unless the intent to do so is clearly expressed," and it concluded that nothing in the language of the Act signaled the Legislature's intent to include private nuisance actions within its scope. *Asiala, supra* at 18, quoting *Pineo* v. *White,* 320 Mass. 487, 491 (1946). In our view, the enabling legislation of the Act expressed such an intent. Section 18 of St. 1978, c. 512, states: "The provisions of this act shall be construed liberally for the accomplishment of the purposes thereof but shall not be construed to supersede or repeal [G. L. c. 81, § 18, and G. L. c. 84, §§ 15-25]. Any other provision of law inconsistent with any other provisions of this chapter shall not apply."[17] We read this language as expressing a clear legislative intent to abolish the common-law doctrine of governmental immunity, and to replace it with a comprehensive statutory scheme that would govern the liability of public employers in tort actions, including those for private nuisance.[18]

Our conclusion is supported by the plain language of § 2 of

[16]One effect of the Appeals Court's holding in *Asiala* v. *Fitchburg,* 24 Mass. App. Ct. 13, 16-18 (1987), was that a private nuisance claim against a municipality that as a matter of law required a showing of negligence would be governed by the common law and not subject to the procedures and defenses of the Act, but the negligence claim itself would fall within the scope of the Act. See *Tarzia* v. *Hingham,* 35 Mass. App. Ct. 506, 507-510 (1993) (reaching "Solomonic" conclusion that negligence claim against town for property damage caused by overflowing river and pond was barred by Act's discretionary function exception to municipal liability, but that nuisance claim based on same conduct was not included within G. L. c. 258 and therefore not barred by discretionary function exception).

[17]General Laws c. 81, § 18, pertains to the liability of the Commonwealth for injuries caused by defects on State highways. General Laws c. 84, §§ 15-25, pertain to the liability of municipalities for injuries caused by various defects on public ways.

[18]To the extent that several cases decided after 1987 relied on *Asiala,* they are now overruled. See, e.g., *Fortier* v. *Essex,* 52 Mass. App. Ct. 263, 268 n.8 (2001); *Murphy* v. *Chatham,* 41 Mass. App. Ct. 821, 824-826 (1996); *Belanger* v. *Commonwealth,* 41 Mass. App. Ct. 668, 670 n.3 (1996); *Tarzia* v. *Hingham, supra* at 509-510; *Schleissner* v. *Provincetown,* 27 Mass. App. Ct. 392, 395 n.3 (1989).

458 Mass. 580 (2010)                                    591

Morrissey *v.* New England Deaconess Association — Abundant Life Communities, Inc.

the Act, which states that a public employer shall be liable for the loss of property caused not only by the "negligent" act but also by the "wrongful" act of "any public employee while acting within the scope of his office or employment." G. L. c. 258, § 2. Because the Legislature has commanded that we are to construe liberally the provisions of the Act, see St. 1978, c. 512, § 18, we conclude that a "wrongful act" would encompass a private nuisance. See *Morris* v. *Massachusetts Maritime Academy*, 409 Mass. 179, 186 (1991) (declining to accept defendants' argument that Legislature was required to make specific mention of admiralty claims in order to bring them within ambit of Act). Accordingly, Count III of Morrissey's amended complaint, alleging that the Commonwealth created a private nuisance that interfered with Morrissey's use and enjoyment of the Trust property, falls squarely within the purview of the Act.[19]

Morrissey urges that if private nuisance claims now are going to be considered within the purview of the Act, then this ruling should be applied prospectively. We conclude that the circumstances do not warrant an exception from the normal rule of retroactivity. See *Payton* v. *Abbott Labs*, 386 Mass. 540, 565 (1982) ("general rule is in favor of retroactive application of a change in decisional law"). See also *Papadopoulos* v. *Target Corp.*, 457 Mass. 368, 384-385 (2010). In other cases where we considered whether particular tort claims were encompassed within the ambit of the Act, we did not state that our rulings should have only prospective application. See, e.g., *Molinaro* v. *Northbridge*, 419 Mass. 278, 279 (1995) (Act does not confer immunity on municipality for claims based on wanton or reckless conduct); *Morris* v. *Massachusetts Maritime Academy*, *supra* at 186-187

[19]Morrissey contends that a private nuisance claim cannot be subject to the Act because both the Federal and State Constitutions require reasonable compensation for the "taking" of private property for the public benefit, which would be inconsistent with the provisions of the Act, particularly the statutory cap on damages imposed by G. L. c. 258, § 2. In the circumstances of the present appeal, Morrissey's contention is without merit. He did not allege in Count III of his amended complaint, which is the only one at issue here, that the actions of the Commonwealth purportedly causing a private nuisance amounted to a constitutional "taking" of the Trust property. See notes 7 & 8, *supra*. Moreover, the judge below stated in her memorandum of decision that "the Commonwealth did not involve itself in the alteration of Route 2 by . . . taking any portion of the Trust Property."

(admiralty claims were well known under statutory and common law; Act merely expanded such claims to public employers in same manner as liability imposed on private individuals); *Mc-Namara* v. *Honeyman*, 406 Mass. 43, 46-47 (1989) (concluding, for first time, that Act immunizes public employee from gross negligence as well as ordinary negligence). As Morrissey has pointed out, since our decision in *Morash, supra* at 616-619, the law in Massachusetts has been clear that where the Commonwealth creates or maintains a private nuisance that causes injury to the real property of another, it is liable to the same extent as a natural person would be. The present case simply clarifies the fact that the Act is a comprehensive statutory scheme that codified the common-law principle articulated by Morrissey. Retroactive application of our decision furthers the purpose of having a consistent and clearly defined body of law, and we envision no specific hardships or inequities that would likely follow.

3. *Exceptions to waiver of immunity under Act.* Although the Act has abrogated the Commonwealth's immunity in tort actions in most circumstances, the Legislature has, "for reasons of public policy, chosen to preserve sovereign immunity for certain claims, irrespective of their legal sufficiency or merit, or the gravity of the injuries alleged." *Smith* v. *Registrar of Motor Vehicles*, 66 Mass. App. Ct. 31, 32 (2006). See G. L. c. 258, § 10 (*a*)-(*j*); *Fortenbacher* v. *Commonwealth*, 72 Mass. App. Ct. 82, 85-86 (2008). As relevant to the present action, the gravamen of Morrissey's amended complaint is his allegation that the Commonwealth issued a permit to Deaconess to make specified improvements to Route 2, and that this work caused noise, dust, vibrations, and other damage to the Trust property, which interfered with Morrissey's use and enjoyment of it.[20] See note 7, *supra*. General Laws c. 258, § 10 (*e*), preserves governmental immunity as to "any claim based upon the issuance, denial, suspension or revocation or failure or refusal to issue, deny, suspend or revoke any permit." The language of § 10 (*e*) is plain and unambiguous, and it "cuts a broad swath, exempting from recovery

---

[20]To the extent that Morrissey also alleges that the Trust property has been harmed by the manner in which the construction work on Route 2 has been performed, that claim is properly directed not against the Commonwealth for the issuance of the permit but against the defendants who actually performed the work, and they are not part of the present appeal.

'any claim' in a variety of named circumstances." *Smith* v. *Registrar of Motor Vehicles, supra,* quoting G. L. c. 258, § 10 (*e*). "If the gravamen of a plaintiff's complaint can be traced back to any one or more of the types of events or activities delineated in § 10 (*e*), then the action is barred." *Smith* v. *Registrar of Motor Vehicles, supra* at 33 (sovereign immunity provisions of G. L. c. 258, § 10 [*e*], barred lawsuit alleging that registry of motor vehicles was negligent in issuing erroneous report about status of plaintiff's vehicle registration). Here, because the actions that allegedly caused the private nuisance occurred as a result of the Commonwealth's issuance of a work permit to Deaconess, Morrissey's claim against the Commonwealth is barred by the express language of § 10 (*e*).

The abrogation of sovereign immunity under the Act also does not apply to "any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a public employer or public employee, acting within the scope of his office or employment, whether or not the discretion involved is abused." G. L. c. 258, § 10 (*b*). "The discretionary function exception is narrow, 'providing immunity only for discretionary conduct that involves policy making or planning.' " *Greenwood* v. *Easton,* 444 Mass. 467, 470 (2005), quoting *Harry Stoller & Co.* v. *Lowell,* 412 Mass. 139, 141 (1992). "The line of demarcation is between those functions that 'rest on the exercise of judgment and discretion and represent planning and policymaking [for which there would be governmental immunity] and those functions which involve the implementation and execution of such governmental policy or planning [for which there would be no governmental immunity].' " *Greenwood* v. *Easton, supra,* quoting *Harry Stoller & Co.* v. *Lowell, supra* at 142. Here, the Commonwealth's decision to issue a permit to Deaconess was based on policy and planning considerations regarding roadway improvements to Route 2 in light of Deaconess's construction of The Groves. As such, the issuance of the permit was a discretionary function and, therefore, was barred by § 10 (*b*).[21] See, e.g., *Barnett* v. *Lynn,* 433 Mass. 662, 664 (2001) (immunity conferred where

---

[21]The discretionary nature of the decision to issue the permit was exemplified, in part, by the language of the permit itself: "This permit is issued with the stipulation that it may be modified or revoked at any time at the discretion

city's decision not to erect fence on city property to prevent sledding was based on allocation of limited resources and, as such, was discretionary function); *Patrazza* v. *Commonwealth*, 398 Mass. 464, 469-470 (1986) (immunity conferred where design of highway guardrail and policy implementing its use were encompassed within discretionary function exception of § 10 [*b*]); *Drivas* v. *Barnett*, 24 Mass. App. Ct. 750, 757 (1987) (immunity conferred on town where design of intersection encompassed within discretionary function exception of § 10 [*b*]).

4. *Other claims.* In his brief to this court and in a supplemental letter filed pursuant to Mass. R. A. P. 16 (1), as amended, 386 Mass. 1247 (1982), see note 8, *supra*, Morrissey challenges the judge's dismissal of Count I (interference with rights to lateral support), Count II (trespass to land), and Count V (inverse condemnation) of his amended complaint. However, Morrissey did not seek entry of a separate and final judgment on those claims pursuant to Mass. R. Civ. P. 54 (b), 365 Mass. 820 (1974), which, if allowed, would have enabled him to file an immediate appeal.[22] In the absence of such action, no appeal can be taken from a trial judge's partial "judgment" on a claim prior to entry of a final judgment disposing of all claims against all parties to the action. See *Rollins Envtl. Servs., Inc.* v. *Superior Court*, 368 Mass. 174, 178-179 (1975) (dismissing effort by plaintiff to obtain piecemeal appellate review of interlocutory order); *Bragdon* v. *Bradford O. Emerson, Inc.*, 19 Mass. App. Ct. 420, 422-423 (1985). Contrast note 10, *supra*. Rule 54 (b) is directed toward efficient use of judicial resources, "balancing the need for immediate review, based on the likelihood of injustice or hardship to the parties of a delay in entering a final judgment as to part of the case, against the appellate courts' 'traditional abhorrence of piecemeal appellate review,' . . . as a matter of

of the District Four Highway Director or an authorized Representative without rendering said Department or the Commonwealth of Massachusetts liable in any way."

[22]Rule 54 (b) of the Massachusetts Rules of Civil Procedure, 365 Mass. 820 (1974), provides, in pertinent part: "When more than one claim for relief is presented in an action, . . . or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment."

sound judicial administration." *Long* v. *Wickett*, 50 Mass. App. Ct. 380, 387 (2000), quoting *Atkinson's Inc.* v. *Alcoholic Beverages Control Comm'n*, 15 Mass. App. Ct. 325, 327 (1983). In light of our "bedrock policy against premature and piecemeal appeals," *Long* v. *Wickett*, *supra* at 388, the narrow exception to this policy created by rule 54 (b) is exercised sparingly. See *id.* at 389. We do not consider Morrissey's challenges to the dismissal of Counts I, II, and V of his amended complaint because no appeal is properly before us.

5. *Conclusion.* The portion of the October 14, 2009, order of the Superior Court denying the Commonwealth's motion to dismiss Count III of Morrissey's amended complaint, alleging private nuisance, is reversed. This case is remanded to the Superior Court for further proceedings in accordance with this opinion.

*So ordered.*