Ullmann, Robert L., J.
INTRODUCTION
The defendant, City of Worcester (“Ciiy”), has moved for summary judgment on the negligence and nuisance claims of plaintiff, Canterbury Automotive, Inc. (“Canterbury”), arising from the flooding of extensive raw sewage onto plaintiffs premises during Tropical Storm Hanna in September 2008. The plaintiff alleges that the City failed to make adequate improvements to its sanitary sewer and storm water drainage systems, knowing that plaintiffs property was vulnerable to flooding, and that the City failed to adequately maintain its sewers and drains. Canterbuiy Br. at l.[1]
On December 5, 2013, the Court held a hearing on the City’s motion. Both parties were ably represented by counsel. The Ciiy argues that plaintiffs claims are barred by two separate immunity provisions of the Massachusetts Tort Claims Act (“MTCA”), G.L.c. 258, § 10(b), which applies to discretionary government functions, and G.L.c. 258, §10(j), which applies to damage not “originally caused” by a public employer. With regard to the second immunity provision, the City argues that the flooding damage to Canterbury’s premises was caused by an “act of God,” a “70-year storm” that the Ciiy could not have anticipated. The City also argues that plaintiffs lack of expert testimony is fatal to its claims.
For the reasons discussed below, this Court ALLOWS the City’s summary judgment motion on both the negligence and nuisance claims. As to the City’s decisions not to make certain improvements to its sewer and drainage systems, these are clearly the type of core discretionary functions that are immunized from liability under G.L.c. 258, § 10(b). As to the City’s alleged inadequate maintenance of its sewers and drains, MCTA does not immunize the Ciiy from liability, but negligence and nuisance cannot possibly be proved under the facts of this case without expert testimony, which plaintiff has not proffered. In light of the above-noted rulings, the Court need not rule on the City’s immunily argument under G.L.c. 258, §10(j).
FACTUAL BACKGROUND
The following facts appear to be undisputed.
In September 2008, Canterbuiy was operating an auto repair business at 449 Southbridge Street in Worcester, a low elevation point with regard to the Blackstone River watershed. SOFpar. 5. The plaintiffs *6 property is also at a lower elevation than the Quinsignamond Avenue Combined Sewer Overflow Treatment Facility (“Quinsignamond Avenue Facility”). See id., par. 6.
Since at least 2000, the City has made several efforts to reduce the frequency and severity of flooding along Southbridge Street and other low elevation areas, at significant financial cost. Id., pars 7-9; 12. In 2004, the City completed a project that separated the Quinsignamond Avenue Facility from the Southbridge Street sanitary sewer and storm drainage systems, at a cost of $1 million. Id., pars. 8-9. The City created separate sanitary sewer and storm water drainage systems along Southbridge Street, and redirected existing catch basins from the previous combined system to a new storm drain. Id. In 2007, the City completed another project to reduce flooding along Southbridge Street and other low elevation locations, at a cost of$l 5 million. Id., par. 12. However, the City’s storm drainage system has certain capacity limitations, and it cannot prevent flooding along portions of Southbridge Street during severe rain storms. See id., pars. 15-16; 18; see also, Jt. Appx. Ex. 2, par. 11-12. It appears to be undisputed that, as of September 2008, the Ci1y had not made the specific changes to elevation and street grading that are grounds for plaintiffs claims.
The Cily’s alleged maintenance failures are described in conjunction with the legal discussion of Canterbury’s negligent maintenance claim.
LEGAL DISCUSSION
A. Standard for Summary Judgment
Summary judgment serves as a “device to make possible the prompt disposition of controversies on their merits without a trial, if in essence there is no real dispute as to the salient facts or if only a question of law is involved.” Kourouvacilis v. General Motors Corp., 410 Mass. 706, 715 (1991), and authorities cited. The familiar standard governing motions for summary judgment provides that summary judgment shall be granted forthwith where there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56; Barrows v. Wareham Fire District, 82 Mass.App.Ct. 623, 625 (2012) (citing Cassesso v. Commissioner of Correction, 390 Mass. 419, 423 (1983)). In assessing the record on a motion for summary judgment, all reasonable inferences are drawn in favor of the non-moving parly. Terra Nova v. Fray-Witzer, 449 Mass. 406, 411 (2007). Summary judgment should be granted, however, if the nonmoving party has no reasonable expectation of proving one or more elements of the claim. See Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991). The moving party bears the burden of demonstrating the absence of evidence to support the essential elements of the claim. Id. at 817. “On summary judgment, the court’s task is not to weigh evidence or decide the credibility of the testimony before it. ” Kelly v. Brigham & Women’s Hospital, 51 Mass.App.Ct. 297, 299 n.4 (2001).
B. Application of the Legal Standard
1. Immunity for discretionary functions
Canterbury’s negligence and nuisance claims arise under MTCA, and are subject to all requirements and defenses thereunder. See Morrisey v. New England Deaconess Association B Abundant Life Communities, Inc., 458 Mass. 580, 589-91 (2010). The statute was designed to eliminate governmental immunity, subject to certain clearly delineated exceptions. See Harry Stoller & Co. v. City of Lowell, 412 Mass. 139, 141 (1992). One such exception immunizes government entities based upon their “exercise or performance, or failure to exercise or perform a discretionary function.” G.L.c. 258, §10(b). The relevant case law makes clear that the Cfiy has immunity for its decisions not to make certain improvements to its sewer and drain systems, but does not have immunity for its alleged deficiencies in maintaining them.
In Whitney v. Worcester, 373 Mass. 208 (1977), the Supreme Judicial Court adopted a new approach in analyzing claims of immunity based on discretionary functions. Instead of considering the nature of the governmental enterprise as a whole, the Court examined the specific act or omission complained of as tortious, and devised a test that is dispositive of plaintiffs claims of inadequate improvements to the City’s sewer and drain systems. The Court held:
When the particular conduct which caused the injury is one characterized by the high degree of discretion and judgment involved in weighing alternatives and making choices with respect to public policy and planning, governmental entities should remain immune from liability . . . On the other hand, when the particular conduct claimed to be tortious involves rather the carrying out of previously established policies or plans, such acts should be governed by the established standards of tort liability applicable to private individuals or entities . . .
Id. at 373, (additional citations omitted). Of great relevance to this case, the Court cited with approval Lobster Pot of Lowell, Inc. v. City of Lowell, 333 Mass. 31 (1955), for the proposition that “a governmental entity is not liable for negligence in the planning of sewers, but may be liable for negligence in their construction and maintenance.” Id. at 217.[2]
The City has devoted extensive resources to improvements to its sanitary sewer and storm water drainage systems, in an effort to mitigate the frequency and severity of flooding onto property along Southbridge Street. However, as Assistant City DPW Commissioner Matthew J. Labovites states in his affidavit, “(a]ll public works systems have finite capacity and are built to strike an optimum balance between dependable service and cost.” (Jt. Appx. Ex. 2, par. 18.) Since 2004, the Ci1y has made those improvements to *7 its sewer system in the Southbridge Street area that were shown by studies to be “feasible, effective and affordable in consideration of limited municipal resources.” Id. The City’s decisions not to address certain problems of elevation and street grading are precisely the type of discretionary resource allocation decisions that are protected from liability by governmental immunity. See Whitney, 373 Mass. at 217-18; see also, Patrazza v. Commonwealth, 398 Mass. 464, 467-70 (1986) (Commonwealth’s decision to leave guardrail end pieces on certain state highways exposed, rather than burying them, was exercise of discretionary function immunized from liability under G.L.c. 258, §10(b)).[3]
In contrast to decisions about what improvements it makes to its sewer and drain systems, the City does not have immunity for claims based upon negligent maintenance of those systems. “Any negligence in performing, or failing to perform, the ministerial task of maintenance does not rise to the level of ‘public policy or planning’ decisions warranting protection under G.L.c. 258, §10(b).” Doherty v. Belmont, 396 Mass. 271, 276 (1985); see also, Lobster Pot of Lowell, 333 Mass. at 33. Therefore, this Court must decide whether plaintiff has adduced sufficient evidence of negligent maintenance, or nuisance caused by such deficient maintenance, to survive summary judgment.
2. Need for expert testimony
Expert testimony is required on any subject “beyond the common knowledge or understanding of the lay juror.” Commonwealth v. Sands, 424 Mass. 184, 186 (1997). Therefore, expert testimony is necessary to establish both the applicable standard of care and causation resulting from an alleged defect of any “complex, technical piece of machinery, whose design and operational requirements are not straightforward.” Esturban v. Massachusetts Bay Transportation Authority, 68 Mass.App.Ct. 911, 911 (2007) (affirming award of summary judgment in favor of defendants in case involving alleged negligent design of escalator).
Canterbury has proffered the following evidence of conditions of the City’s sanitary sewer and storm water drainage systems between 2006 and 2011,[4] and statements of City officials, to support its claim that the City negligently maintained its sewers and drains and caused a nuisance, resulting in damage to its property; (1) the City’s agreement in September 2006 to pay a $125,000 fine to the federal government for violations of the Clean Water Act, in an action brought by the Environmental Protection Agency (“EPA”) based on repeated sewage overflows throughout the City (Jt. Appx. Ex. 7); (2) the finding in a March 2011 expert report commissioned by the City (the “2011 Report”) that sediment depths ranged from 6" to 8" along the 28" x 42" to 36-inch diameter storm drain at the relevant part of Southbridge Street (2011 Report at 9); (3) a related finding in the report that the sediment “reduces hydraulic capacity of the Southbridge Street storm drain by approximately 40 percent, which contributes to system surcharging during periods of high flow ...” (id.); (4) a letter from a city councilor faxed to plaintiff in August 2010, paraphrasing a statement by the city manager that the Southbridge Street flooding is a “ciiy problem and the city needs to address the situation and fix it” (Jt. Appx. Ex. 8); and (5) an October 2013 email from a City employee acknowledging that City officials know “we have an issue with our catch basin” that affects Southbridge Street. (Jt. Appx. Ex. 9.)
Assuming for argument’s sake that Canterbury can overcome the multiple hearsay issues presented by this evidence, there is no conceivable way for any reasonable trier of fact to find negligence or nuisance without expert testimony. The City made no admission of negligence or wrongful conduct in connection with the Clean Water Act violations, and those violations all occurred at least two years before the September 2008 flood damage at issue in this case. Likewise, the two statements of City employees are not evidence of negligence or nuisance. The March 2011 Report includes some relevant statements, but these statements raise many more issues than they answer. To cite just two examples, no layperson could possibly know whether 6" to 8" of sediment in a large storm drain reflects a failure to follow the relevant standard of care, or whether a 40 percent decrease in hydraulic capacity made any difference in the extent of flooding caused by Tropical Storm Hanna, a very severe storm. The fact that these observations were made more than two years after the fact only adds to the futility that any trier of fact would face in considering plaintiffs claims without expert testimony.
It seems self-evident to this Court that the answers to the above-noted issues are far “beyond the common knowledge or understanding of the lay juror.” Sands, 424 Mass, at 186. A city’s sanitary sewer and storm water drainage systems surely qualify as a “complex, technical piece of machinery, whose design and operational requirements are not straightforward.” Estuchan, 68 Mass.App.Ct. at 911. Expert testimony is required to establish not only the standard of care, but also the causal link between any failure to follow the standard of care and damage that follows a severe rain storm.
Recently in Gencarelli v. Commonwealth, 84 Mass.App.Ct. 1107 (2013) (unpublished), the Appeals Court upheld a grant of summary judgment in favor of the City based on lack of sufficient expert testimony, in a case involving alleged damage to wetlands from storm water runoff. The trial court had ruled that expert testimony of a civil engineer was not sufficient, given the “intricacies of municipal storm water management.” Id. Here, plaintiff has not adduced the testimony of a civil engineer or any other expert. Therefore, summary judgment in favor of the City on *8 plaintiffs claim of negligent maintenance must be granted.[5]
3. Nuisance
In Morrissey, supra, the Supreme Judicial Court held that MCTA applies to nuisance claims. 458 Mass, at 581. Therefore, as with Canterbury’s claims of negligence, the City has immunity for nuisance claims arising out of the City’s alleged failure to make certain improvements to its sewer and drain systems, but does not have immunity for claims arising out of the City’s alleged deficient maintenance of those systems. Just as Canterbury’s claim that the City negligently maintained its sewers and drains cannot survive summary judgment without expert testimony, its claim of nuisance caused by deficient maintenance of those systems cannot survive summary judgment without expert testimony.
A nuisance is actionable when “a property owner creates, permits or maintains a condition or activity on his property that causes a substantial and unreasonable interference with the use and enjoyment of the property of another.” Doe v. New Bedford Housing Authority, 417 Mass. 273, 288 (1994). The plaintiff must prove that the defendant’s conduct was intentional or unreasonable. See DeSanctis v. Lynn Water & Sewer Commission, 423 Mass. 112 (1996) (upholding jury’s finding that City of Lynn did not create a nuisance by allowing water flow onto plaintiffs land, and that plaintiffs contributory negligence precluded recovery). Therefore, at a minimum, Canterbury would have to prove that the City’s conduct in maintaining its sewers and drains was unreasonable. Knowing what constitutes reasonable effort to maintain a city’s sanitary sewer and storm water drain systems is surely beyond the ken of the layperson. Therefore, for the same reasons that Canterbury cannot prove negligence without expert testimony, without expert testimony it cannot prove that in September 2008 the City created a nuisance.
CONCLUSION
The defendant, City of Worcester’s Motion For Summary Judgment (pleading #5) is ALLOWED against the plaintiff, Canterbury Automotive, Inc. on both counts, Count 1 (negligence) and Count 2 (nuisance).

 “Canterbury Br.” refers to plaintiffs brief in opposition to the City’s motion for summary judgment. “SOF” refers to the parties’ Consolidated Statement of Facts. “Jt. Appx. Ex._” refers to exhibits to the parties’ Joint Appendix.

Canterbury has not made allegations of negligent construction of any sewer or drain. In any event, such claims would require expert testimony for the reasons discussed below.

Although the City has discretion as to what improvements it makes to its sewer and drain systems, it should endeavor to make those decisions based upon current weather models. The City installed pipe in the Southbridge Street area to accommodate “10-year” storms. The Court notes however, that, in Gremo v. City of Worcester, 2012 WL 360486 (Mass.App.Ct. Feb. 6, 2012) (unpublished), the City described extensive rainfall in October 2005, three years before the “70-year storm event” in this case, as a “150-year storm event.” And it appears that the City’s storm water drain system was unable to handle downpours in 2011 and 2013. Jt. Appx. Ex. 5, Cardinal Aff. ¶¶7-8. Although storm events, like gamblers, sometimes beat the odds, the City may want to consider whether the frequency of extreme weather events has increased, and plan accordingly, if it has not already done so.

Both parties have proffered evidence of conditions of the City’s sewers and drains in 2013. The Court finds this evidence far too remote to support or defend claims about how the City’s sewers and drains were maintained five years earlier. Other evidence proffered by Canterbury is likewise not relevant to its claims.

The Court notes that significant other evidence seems to undermine plaintiffs case. For example, Assistant DPW Commissioner Labovites states in his affidavit that a 2011 inspection found no significant sediment at either end of the section of storm drain closest to plaintiffs premises. (Jt. Appx. Ex. 2 , par. 16.) And the 2011 Report found that the Southbridge Street drain system was “observed to be functioning as intended” during multiple wet weather site visits in 2010. (Jt. Appx. Ex. 4 at 1.) These findings highlight the futility of establishing negligence and causation without expert testimony.