JANE RICHARDSON, administratrix,[1] *vs.*
MICHAEL DAILEY & others.[2]

Suffolk. November 4, 1996. - February 13, 1997.

Present: WILKINS, C.J., ABRAMS, LYNCH, & GREANEY, JJ.

*Commonwealth,* Claim against, Liability for tort. *Practice, Civil,* Present-
ment of claim under Massachusetts Tort Claims Act. *Municipal Corpora-
tions,* Liability for tort. *Massachusetts Tort Claims Act. Civil Rights,*
Availability of remedy.

Court officers did not violate any custodial duty to prevent a prisoner in
their care from committing suicide where there was no evidence that the
officers knew or had reason to know that the prisoner was suicidal.
[260-261]

In a negligence action, summary judgment was properly entered in favor of
a municipal defendant, where the plaintiff had failed to comply with the
presentment requirements of G. L. c. 258, § 4, before instituting suit.
[261-262]

In an action seeking damages from the Commonwealth under the provi-
sions of 42 U.S.C. § 1983 for a prisoner's pretrial detention suicide, the
plaintiff did not demonstrate the Commonwealth's "deliberate indiffer-
ence" toward the detainee rising above the level of simple negligence,
where there was no evidence that the custodial officers knew or had rea-
son to know of the prisoner's suicidal tendencies. [262-263]

In a claim under 42 U.S.C. § 1983 against a city seeking damages for a
prisoner's pretrial detention suicide, summary judgment was properly
entered for the city where the plaintiff did not demonstrate that the
city's actions in the maintenance of its holding cells amounted to a
policy of "deliberate indifference." [263-265]

CIVIL ACTION commenced in the Superior Court Depart-
ment on September 6, 1991.

The case was heard by *Thayer Fremont-Smith,* J., on mo-
tions for summary judgment.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Murray A. Kohn* for the plaintiff.

[1]Of the estate of her husband, George Richardson, and individually.

[2]Lawrence Sullivan, the city of Boston, and the Commonwealth.

*Michelle A. Kaczynski*, Assistant Attorney General, for the Commonwealth & others.

*Krisna M. Basu*, Assistant Corporation Counsel, for the City of Boston.

ABRAMS, J. A Superior Court judge ruled in favor of the defendants' motions for summary judgment on the basis that the plaintiff's claim was barred by § 10 (*h*) of the Massachusetts Tort Claims Act, G. L. c. 258. The parties concede that G. L. c. 258, § 10 (*h*), was an inappropriate basis for the allowance of summary judgment. The defendants contend that, although G. L. c. 258 is inapplicable, the allowance of their motions for summary judgment should be affirmed. See *Aetna Cas. & Sur. Co.* v. *Continental Cas. Co.*, 413 Mass. 730 (1992). We transferred the case to this court on our own motion. We affirm the allowance of the defendants' motions for summary judgment.

*Facts.*[3] George Richardson committed suicide on September 8, 1988, in a holding cell in the South Boston District Court. He had been arrested the prior night for heroin possession. The officers on duty at the court house at the time of the suicide were the defendants Michael Dailey and Lawrence Sullivan (court officers), both employees of the Commonwealth.

From the time of his transfer into the court officers' custody the previous evening, the decedent's skin was clammy and sweaty, and he appeared nervous. His wife, who had visited the decedent on the night of his arrest, told the court officers that the decedent was going through heroin withdrawal.

After being arraigned and returned to his cell, Richardson told Dailey that he was "drug sick" and that he wanted to be taken to Bridgewater State Hospital for drug treatment and detoxification. Dailey told Richardson that he should have informed the judge and that there was nothing that Dailey could do for him. Dailey then returned upstairs.

Three or four times the next morning, Richardson told the court officers that he was suffering from drug sickness and that he needed to go to Bridgewater State Hospital for treatment. The court officers ignored Richardson's request.

At 1 P.M., the court officers brought lunch to Richardson,

---

[3]These facts are presented in the light most favorable to the plaintiff because the defendants have brought the motions for summary judgment. *Williams* v. *Hartman*, 413 Mass. 398, 401 (1992).

where he repeated his request to be transferred to Bridgewater State Hospital. Dailey responded that Richardson would have to wait until he arrived at the Charles Street jail. Richardson committed suicide later that afternoon by hanging himself from the overhead bars of his cell with his sweatshirt.

The coroner found opiates in Richardson's system and drug needle track marks on his arms. There is no evidence that the officers were aware of these marks.

On September 6, 1991, the plaintiff, Jane Richardson, filed a complaint seeking damages as the administratrix of her husband's estate. There were eight counts brought: Counts I and II against the Commonwealth for negligence and wrongful death; Counts III, IV, V, and VI for loss of consortium on behalf of the family; Count VII against the Commonwealth for civil rights violations under 42 U.S.C. § 1983 (1994) for the actions of the court officers; and Count VIII against the city of Boston for civil rights violations based on a de facto policy of improperly maintaining its holding cell.

The loss of consortium claims were consolidated into Counts I and II. Summary judgment was entered on the remaining counts, including Counts I and II. The plaintiff appealed and we transferred the case from the Appeals Court on our own motion.

1. *Negligence claims against the Commonwealth.* The plaintiff contends that the court officers violated their custodial duty in failing to prevent the decedent from committing suicide. We do not agree.

In order for a plaintiff to recover, the courts require "there [must] be evidence that the defendant[s] knew, or had reason to know, of the [decedent's] suicidal tendency." *Slaven* v. *Salem,* 386 Mass. 885, 888 (1982), citing *Maricopa County* v. *Cowart,* 106 Ariz. 69 (1970) (deceased made repeated statements of intention to kill himself); *Dezort* v. *Hinsdale,* 35 Ill. App. 3d 703 (1976) (defendants aware of deceased's known and expressed suicidal tendencies); *Thornton* v. *Flint,* 39 Mich. App. 260 (1972) (enough evidence to raise issues of fact for jury to decide whether defendant knew, or should have known, of the decedent's condition); *Belen* v. *Harrell,* 93 N.M. 601 (1979) (custodial officials warned of deceased's suicidal tendencies). Thus, the plaintiff was required to proffer facts which supported her assertion that the police knew, or had reason to know, that the decedent was suicidal. *Slaven, supra* at 889. The affidavits filed do not assert such facts.

The evidence presented was that the decedent was ill, nervous, with clammy skin, and repeatedly said that he was drug sick.[4] Based on this information, the court officers reasonably could not have concluded that the decedent was suicidal.[5] The decedent gave no indication of any suicidal tendencies. The plaintiff's offer of proof does not claim that heroin withdrawal leads, or might lead, to suicide, or that the court officers should have known that heroin withdrawal was linked to suicide. In the absence of such evidence, the Commonwealth is entitled to have its summary judgment motion allowed as to these claims.

2. *Presentment — negligence claims against the city.* The city of Boston claims that its motion for summary judgment should be affirmed because of the plaintiffs' failure to comply with the presentment requirements of G. L. c. 258, § 4. We agree.

"General Laws c. 258, § 4, provides, in pertinent part, that '[a] civil action shall not be instituted against a public employer on a claim for damages under this chapter unless the claimant shall have first presented his claim in writing to the executive officer of such public employer within two years after the date upon which the cause of action arose . . . .' Presentment must be made 'in strict compliance with the statute.' *Weaver* v. *Commonwealth*, 387 Mass. 43, 47 (1982). *Lodge* v. *District Attorney for the Suffolk Dist.*, 21 Mass. App. Ct. 277, 284 (1985)." *Gilmore* v. *Commonwealth*, 417 Mass. 718, 721 (1994).

"Presentment ensures that the responsible public official receives notice of the claim so that the official can investigate to determine whether or not a claim is valid, preclude payment of inflated or nonmeritorious claims, settle valid claims expeditiously, and take steps to ensure that similar claims will not be brought in the future." *Lodge* v. *District Attorney for the Suffolk Dist.*, *supra* at 283.

The plaintiff sent a letter to the city clerk's office dated

---

[4]The defendants in an affidavit asserted that many prisoners falsely claim to be "drug sick" so that they would be sent to the facility at Bridgewater rather than to the Charles Street jail, which was viewed by many as a less desirable place to be detained.

[5]If the decedent had died or suffered injury due directly to heroin withdrawal, then our analysis might be different, although we are not faced with that circumstance here.

August 16, 1990, addressed to the mayor that purported to present the plaintiff's claims against the city. However, the letter only discussed the actions of the court employees of the Commonwealth.[6]

The letter does not mention a claim against the city. The court employees are Commonwealth employees, and any negligent acts or omissions on their part are not the responsibility of the city. The letter does not contain any allegations of negligent design of the jail cell, which the plaintiff now claims led to the decedent's ability to commit suicide. See *Wightman* v. *Methuen*, 26 Mass. App. Ct. 279, 281-282 (1988) (specific claims being complained of must be mentioned in the presentment letter).

There was no proper presentment to the city within a two-year period as required by G. L. c. 258, § 4. Therefore, on that ground, the summary judgment in favor of the city was proper.

3. *Section 1983 claim against the Commonwealth.* The plaintiff seeks damages for violations of the decedent's civil rights under 42 U.S.C. § 1983. See *Miga* v. *Holyoke*, 398 Mass. 343 (1986); *Estelle* v. *Gamble*, 429 U.S. 97 (1976).[7]

Title 42 U.S.C. § 1983 allows citizens to bring lawsuits against government employees individually for civil rights violations. See *Parratt* v. *Taylor*, 451 U.S. 527 (1981); *Chapman* v. *Houston Welfare Rights Org.*, 441 U.S. 600 (1979). To be liable under § 1983 for a pretrial detention suicide, the plaintiff must demonstrate a "deliberate indifference" toward the detainee on the part of the court officers. *Bowen* v. *Manchester*, 966 F.2d 13, 16 (1st Cir. 1992). This "deliberate indifference" must rise above the level of simple negligence. *Id.* at 17.

A plaintiff can show deliberate indifference in a custodial

---

[6]The letter in relevant part said: "[The decedent] died as a result of the negligence of the courthouse employees. Before [the decedent] died, he, as well as several people in the adjoining cells, yelled for help. There was no response from the guards. [The decedent] was left alone in the cell with his hooded sweatshirt and the net above him, even though it was known that he was going through withdrawal and was extremely depressed."

[7]See Glannon, Recovery for Civil Rights Violations in Massachusetts: A Comparison of Section 1983 with State Tort Remedies, 18 Suffolk U.L. Rev. 249 (1984), for a discussion comparing G. L. c. 258 with 42 U.S.C. § 1983.

suicide case by showing "(1) an unusually serious risk of [self-inflicted] harm . . . (2) defendant's actual knowledge of (or, at least, willful blindness to) that elevated risk, and (3) defendant's failure to take obvious steps to address that known, serious risk. The risk, the knowledge, and the failure to do the obvious, taken together, must show that the defendant is 'deliberately indifferent' to the harm that follows." *Id.*, citing *Manarite* v. *Springfield*, 957 F.2d 953, 956 (1st Cir.), cert. denied, 506 U.S. 837 (1992). "In the absence of a previous threat of or an earlier attempt at suicide, we know of no federal court in the nation . . . that has concluded that official conduct in failing to prevent a suicide constitutes deliberate indifference." *Elliott* v. *Cheshire County*, 940 F.2d 7, 11 (1st Cir. 1991). Because the decedent displayed no suicidal tendencies, there is no evidence that the court officers knew or should have known that he was a suicidal risk. Thus, the plaintiff's § 1983 claim against the Commonwealth fails.

4. *Section 1983 claim against the city of Boston.* The plaintiff claims that she is entitled to recovery under 42 U.S.C. § 1983 because of the city of Boston's "deliberate indifference" to the maintenance of its jail cells. She argues that the city was acting in accordance with a policy of improperly maintaining its holding cells, which enabled her husband to commit suicide. We disagree.

Section 1983 of 42 U.S.C. allows plaintiffs to sue governmental bodies for actions taken pursuant to established policies. See *Monell* v. *New York Dep't of Social Servs.*, 436 U.S. 658 (1978). For a municipality to be held liable, an action must be taken that unconstitutionally implements or executes a policy statement, ordinance, regulation, or a decision that has been officially adopted and promulgated by the body's officers. *Id.* at 659.

The plaintiff alleges that the city did not properly maintain its cells. The plaintiff references a Report of the Special Commission to Investigate Suicide in Municipal Detention Centers, Suicide in Massachusetts Lockups 1973-1984 (1984), that indicates that "a rash of suicides" has occurred in municipal detention centers.[8]

The decedent's suicide was the first to occur at the South

---

[8]The defendants objected to the use of the report based on hearsay and other grounds. On the result we reach, we need not decide whether the

Boston District Court, or at any District Court, in over ten years. While suicides had occurred at other detention centers owned by the city, the absence of suicides in the District Courts is counter to any "deliberate indifference" or city policy of ignoring suicides in the holding cells of the District Courts.[9]

In *Bowen, supra,* the court concluded that the failure to modify a cell door in a lockup to eliminate the possibility that a detainee could hang himself was, at most, negligence and not deliberate indifference. *Id.* at 18. Without evidence that "an atrociously high number of detainees committed suicide" the court said that the municipality should not be considered "wilfully blind[ ]" to a particular pattern of suicides. *Id.* at 19.[10]

The regulations cited by the plaintiff requiring overhead bars to be covered[11] applies only to "cells," as defined by 105 Code Mass. Regs. § 470.020 (1994) and not to "holding cells," which is where the decedent hanged himself. Even if the city were under an obligation to follow the regulations and had

report was properly before the judge. We assume, without deciding, that the report was acceptable, and the judge did not err in not striking it.

[9]The difference in functions and conditions between municipal detention centers and District Court holding cells do create a relevant distinction. Local lockups are under the jurisdiction of the city or its police, while the District Court lockups are under the jurisdiction of the Commonwealth where those detained are held for very short periods of time.

[10]The plaintiff points the court to a case from the Eleventh Circuit of the United States Court of Appeals to buttress her argument and show an example where courts have held that a municipality was "deliberately indifferent" to a rash of suicides. *Tittle* v. *Jefferson County Comm'n,* 966 F.2d 606 (11th Cir. 1992).

In *Tittle,* the court overturned a motion for a summary judgment entered against a plaintiff who had sued in circumstances very similar to those that occurred here. The stark difference that separates the case at bar from the *Tittle* case is the predominance of suicide attempts and actual suicides at the Jefferson County jail where Tittle's suicide occurred. Over a period of approximately two years, twenty-nine attempts at suicide by hanging were made in one jail, the majority of which were made from an iron bar across the window in each cell. The decedent's suicide in *Tittle* had been the third successful suicide in six months using the same method and the same bar across the window.

[11]Title 105 Code Mass. Regs. § 470.407 (1994) provides as follows: "All *cells* shall have . . . a protective covering of high impact, transparent plastic over all bar structures accessible to persons detained in a cell. Holding cells and cells constructed after the effective date of these regulations shall not have any barred structures" (emphasis added).

failed to do so, this failure alone would not amount to deliberate indifference. Additional evidence would be required to raise the city's actions to the level of a policy of "deliberate indifference." Such evidence has simply not been offered by the plaintiff. See *ante* at 263-264. The city was entitled to summary judgment.

*Judgments affirmed.*