464 Mass. 261 (2013)                                              261

Shapiro v. City of Worcester; Greenberg v. City of Worcester.

WILLIAM SHAPIRO & another[1] vs. CITY OF WORCESTER.
HENRY GREENBERG vs. CITY OF WORCESTER.

Worcester. October 4, 2012. - January 30, 2013.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Massachusetts Tort Claims Act. Governmental Immunity. Municipal Corpora-
tions,* Governmental immunity, Sewers, Nuisance. *Waiver. Nuisance.
Practice, Civil,* Interlocutory appeal, Execution, Presentment of claim
under Massachusetts Tort Claims Act, Retroactivity of judicial holding.
*Trespass. Negligence,* Municipality, Governmental immunity.

In two civil actions, the doctrine of present execution authorized the defendant
    city to seek interlocutory review of orders relating to the applicability of
    exceptions to waiver of sovereign immunity under the Massachusetts Tort
    Claims Act, G. L. c. 258 (Act), and also authorized the city to seek such
    review of orders relating to the retroactivity of the Act's presentment
    requirement, where such issues were collateral to the substantive aspects of
    the Act, and where the city's right to avoid harassing litigation would be
    lost forever if it were unable to appeal immediately the orders relating to
    the presentment requirement [264-265]; however, the city was not entitled
    to interlocutory review of an order relating to the survivability of a trespass
    claim, where the issue was substantive, not collateral, and did not affect
    the efficacy of the city's appeal at the conclusion of litigation [265].
This court concluded that its holding in *Morrissey* v. *New England Deaconess
    Ass'n — Abundant Life Communities, Inc.,* 458 Mass. 580 (2010) (*Morris-
    sey*), which retroactively applied the substantive provisions of the Mas-
    sachusetts Tort Claims Act, G. L. c. 258 (Act), to nuisance claims,
    prospectively applied the Act's presentment requirement to such claims ac-
    cruing more than two years before the decision in *Morrissey* issued. [266-270]
In an action for nuisance, continuing nuisance, and continuing trespass, aris-
    ing from the discharge of effluent from a defendant city's sewer system
    onto the plaintiffs' property, a Superior Court judge did not err in conclud-
    ing that the discretionary function exemption to waiver of sovereign im-
    munity under G. L. c. 258, § 10 (*b*), did not apply, where the city was
    charged not with planning or policymaking but with ensuring the proper
    implementation by another entity of its chosen course of action [270-271];
    further, exercising its discretion to discuss an issue not raised below, this
    court concluded that the public duty exemption to waiver of sovereign im-
    munity under G. L. c. 258, § 10 (*j*), did not apply, where the city's action
    materially contributed to the overloading of its sewer system and exposed
    homeowners to a known risk, and where the city did not act reasonably
    [271-273].

_____

[1]Sherry Shapiro.

CIVIL ACTION commenced in the Superior Court Department on April 3, 2008.

Motions to dismiss and for summary judgment were heard by *Dennis J. Curran*, J.

CIVIL ACTION commenced in the Superior Court Department on April 3, 2008.

A motion for summary judgment was heard by *John S. Mc-Cann*, J., and a motion for reconsideration was also heard by him.

The Supreme Judicial Court on its own initiative transferred the cases from the Appeals Court.

*Wendy L. Quinn*, Assistant City Solicitor, for city of Worcester.

*John R. Maciolek* for William Shapiro & others.

CORDY, J. In this consolidated appeal, we review two cases, one brought by William and Sherry Shapiro and the other by Henry Greenberg (collectively, plaintiffs), against the defendant, the city of Worcester (city). In their respective actions, which each commenced in the Superior Court in 2008, the plaintiffs allege that the city is liable to them for nuisance, continuing nuisance, and continuing trespass, arising from the discharge of effluent from the city's sewer system onto their properties. In response, the city contends that the plaintiffs' nuisance claims are barred because they failed to satisfy the presentment requirement of the Massachusetts Torts Claims Act (Act), G. L. c. 258, § 4, which, the city contends, applies retroactively in light of our decision in *Morrissey v. New England Deaconess Ass'n — Abundant Life Communities, Inc.*, 458 Mass. 580 (2010) (*Morrissey*).

Additionally, the city argues that the Shapiros' nuisance claims are independently barred by provisions of the Act that provide sovereign immunity to municipalities in instances involving either discretionary decision-making, G. L. c. 258, § 10 (*b*); or the exercise of a public duty, *id.* at § 10 (*j*). Finally, the city argues that the Shapiros' trespass claim fails as a matter of law because the city did not commit an affirmative voluntary act to cause the sewage discharge. The Shapiros' case is before the court on the city's appeal from an order denying its motions to dismiss and for summary judgment. Greenberg's case is before

the court on the city's appeal from an order denying its motion for reconsideration of a previous denial, in part, of its motion for summary judgment. We transferred both appeals to this court on our own motion.

We conclude that application of the presentment requirement in these cases would be egregiously unfair to the plaintiffs given that the law did not require presentment of nuisance claims at the time they filed their lawsuits. As such, we limit the retroactive application of our decision in *Morrissey* to the Act's substantive provisions but decline to extend that principle to the procedural requirement of presentment as it relates to claims whose presentment period would have already expired on the date the decision issued. Further, we hold that neither of the statutory exceptions to sovereign immunity cited by the city is applicable in this case and that the city remains subject to suit. We do not reach the issue whether the city acted with the requisite level of intent with respect to the trespass claim as that issue is not properly before the court.

*Background.* The complaints and the summary judgment records set forth the following facts, which we accept as true for the purposes of our review. See *Iannacchino* v. *Ford Motor Co.*, 451 Mass. 623, 636 (2008), quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555-556 (2007). On May 11, 2000, the city and the Metropolitan District Commission (MDC) executed an agreement (agreement) allowing the MDC to use the city's sewer system. In lieu of a sewer connection fee, the MDC agreed to design, construct, and inspect sewer improvements to the city's sewer system worth approximately $2.875 million. These improvements were to be made in the area of the city that provides sewer service to the plaintiffs' homes on Kinnicutt Road South and Creswell Road. According to the terms of the agreement, the improvement project was to be completed no later than July 1, 2005.

Prior to entering the agreement, the city and MDC conducted studies to determine if the increased flow within the sewer system that would arise from the MDC's use could be accommodated without improvements. In 1996, a report authored by the MDC forecasted that, without the necessary improvements, sanitary sewer backups could occur in residential properties,

such as the plaintiffs', during severe weather conditions. As predicted, on April 3, 2005, October 15, 2006, and April 16, 2007, three backups in the city's sewer line resulted in the discharge of raw sewage onto the area of Kinnicutt Road South and Creswell Road, allegedly causing damage to the plaintiffs' personal and real property, and injury to their persons. At the time of the backups, none of the improvements required under the agreement had been undertaken, and as of June, 2006, the MDC had not even begun designing the sewer improvements. A subsequent report, issued in 2007, concluded that the overflows were due to heavy rain that had infiltrated the system. The report indicated that the discharge was consistent with the predictions made in the MDC's 1996 report and that the system would continue to be subject to overflows in severe weather conditions without the proposed improvements.

*Discussion.* 1. *Doctrine of present execution.* We consider at the outset whether the issues presented by the judges' interlocutory orders are properly before the court. "As a general rule, an aggrieved litigant cannot as a matter of right pursue an immediate appeal from an interlocutory order unless a statute or rule authorizes it." *Elles* v. *Zoning Bd. of Appeals of Quincy,* 450 Mass. 671, 673-674 (2008). According to the doctrine of present execution, however, an interlocutory order is immediately appealable if "it concerns an issue that is 'collateral to the basic controversy,' " *Brum* v. *Dartmouth,* 428 Mass. 684, 687 (1999), quoting *Maddocks* v. *Ricker,* 403 Mass. 592, 600 (1988), and the ruling " 'will interfere with rights in a way that cannot be remedied on appeal' from the final judgment."[2] *Elles* v. *Zoning Bd. of Appeals of Quincy, supra* at 674, quoting *Maddocks* v. *Ricker, supra* at 597-600. Orders denying motions to dismiss based on immunity from suit fall into this limited class of cases because (1) such orders are always collateral to the rights asserted in the underlying action, *Kent* v. *Commonwealth,* 437 Mass. 312, 317 (2002); and (2) the right to immunity from suit would be lost forever if such orders were not appealable until the close of litigation. *Breault* v. *Chairman of the Bd. of Fire*

---

[2] "An issue is collateral to the underlying dispute if it is one that will not have to be considered at trial." *Maddocks* v. *Ricker,* 403 Mass. 592, 596 (1988).

*Comm'rs of Springfield*, 401 Mass. 26, 31 (1987), cert. denied sub nom. *Forastiere* v. *Breault*, 485 U.S. 906 (1988).

Here, the city is entitled as a matter of right to seek interlocutory review of the orders denying its motions for summary judgment with respect to the applicability of the exceptions to waiver of sovereign immunity under the Act.[3] See *Kent* v. *Commonwealth, supra* at 317-320 (concluding that doctrine of present execution applies to claims of immunity under G. L. c. 258, § 10 [*j*]). The city is similarly authorized to seek interlocutory review of the denial of its motions to dismiss and for reconsideration as they relate to the retroactivity of the presentment requirement. As with the exceptions to the waiver of sovereign immunity, the presentment requirement is collateral to the substantive aspects of the Act, and the city's right to avoid harassing litigation would be lost forever if it were unable to appeal immediately the judges' orders that the presentment requirement does not apply retroactively to the plaintiffs' nuisance claims.

However, the same is not true for the city's appeal of the denial of its motion for summary judgment on the issue of whether the Shapiro's negligent trespass claim can survive as a matter of law. The judge's conclusion that the trespass claim survives, because "this is only an action for negligent trespass, [and] there is no requirement that the plaintiffs show an intentional act by the City," is substantive, not collateral, and does not affect the efficacy of the city's appeal at the conclusion of litigation. Thus, the doctrine of present execution is inapplicable, and this issue is not properly before the court.[4]

---

[3]For the purposes of this analysis, we assume that our decision in *Kent* v. *Commonwealth*, 437 Mass. 312, 317 (2002), applying the doctrine of present execution to motions to dismiss, applies with equal force to motions for summary judgment. Regardless of the procedural mechanism used to assert its right to immunity, the government's interest in avoiding harassing litigation by resolving immunity issues quickly is paramount.

[4]Even assuming that the negligent trespass issue were properly before the court, we think the trial judge's order denying the city of Worcester's motion for summary judgment would be unlikely to be disturbed given that the judge correctly recognized that negligent trespass does not require a showing of intentionality. See *DeSanctis* v. *Lynn Water & Sewer Comm'n*, 423 Mass. 112, 118 (1996), citing Restatement (Second) of Torts § 165 (1965) ("plaintiff may recover under the theory of negligent trespass if the jurors determine that the defendant was negligent and that the defendant's negligent entry onto the plaintiff's land caused the plaintiff harm").

2. *Retroactive application of presentment requirement.* We next consider the applicability of the presentment requirement. Orders on motions to dismiss and for reconsideration of motions for summary judgment are legal conclusions that this court reviews de novo. See *Curtis* v. *Herb Chambers I-95, Inc.*, 458 Mass. 674, 676 (2011); *Ritter* v. *Massachusetts Cas. Ins. Co.*, 439 Mass. 214, 215 (2003). The thrust of the city's argument is that our decision in *Morrissey* explicitly requires retroactive application of the Act to nuisance claims and, therefore, the plaintiffs' claims are barred because they failed to present their claims to the city in a timely manner as required by G. L. c. 258, § 4. The plaintiffs respond that our decision in *Morrissey* does not expressly require retroactive application of the presentment requirement and that such application would be patently unjust given that the law did not require any such presentment at the time of filing. We agree with the plaintiffs.

We begin by providing some historical context regarding the Act and nuisance claims. The Act was enacted in 1978, and provides:

> "Public employers *shall be liable* for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment . . . except that public employers shall not be liable . . . for any amount in excess of $100,000 . . . . The remedies provided . . . shall be exclusive of any other civil action or proceeding by reason of the same subject matter against the public employer. . . . Final judgment in an action brought against a public employer under this chapter shall constitute a complete bar to any action by a party to such judgment against such public employer or public employee by reason of the same subject matter." (Emphasis added.)

G. L. c. 258, § 2. The principal reason for its enactment was the Legislature's desire to abolish "sovereign immunity and the crazy quilt of exceptions to sovereign immunity . . . which courts [had] stitched together." *Rogers* v. *Metropolitan Dist. Comm'n*, 18 Mass. App. Ct. 337, 338-339 (1984). See *Vasys* v. *Metropolitan Dist. Comm'n*, 387 Mass. 51, 57 (1982) (describing purposes of Act). At the time of its enactment, however, the

Commonwealth and its municipalities were *already* subject to liability with respect to claims for private nuisance. See *Morash & Sons* v. *Commonwealth*, 363 Mass. 612, 616-619 (1973). Consequently, in *Asiala* v. *Fitchburg*, 24 Mass. App. Ct. 13, 18 (1987), overruled by *Morrissey, supra*, the Appeals Court concluded that "in view of the history and nature of private nuisance actions . . . it was not the intention of the Legislature to include such actions in the Act." As a result, none of the Act's collateral provisions — most notably, the presentment requirement and the exceptions to the waiver of sovereign immunity — was applicable to nuisance claims. *Asiala* v. *Fitchburg, supra* at 18 n.4. Such was the state of the law when the plaintiffs filed their lawsuits in 2008.

In *Morrissey, supra* at 590, we rejected the Appeals Court's conclusion in *Asiala* v. *Fitchburg, supra*, and interpreted the language of the Act as "expressing a clear legislative intent to abolish the common-law doctrine of governmental immunity, and to replace it with a comprehensive statutory scheme that would govern the liability of public employers in tort actions, including those for private nuisance." In so holding, nuisance claims were brought within the ambit of the Act and its attendant provisions. *Morrissey, supra* at 590 & n.18. We further determined that our holding should apply retroactively in order to "further[] the purpose of having a consistent and clearly defined body of law." *Id.* at 592.

In the present dispute, we must consider whether our decision in *Morrissey*, requiring retroactive application of the Act's substantive provisions to nuisance claims, also requires such treatment of the Act's procedural requirement of presentment. General Laws. c. 258, § 4, states:

> "A civil action shall not be instituted against a public employer on a claim for damages under this chapter unless the claimant shall have first presented his claim in writing to the executive officer of such public employer within two years after the date upon which the cause of action arose."

This strict presentment requirement is a statutory prerequisite for recovery under the Act. *Vasys* v. *Metropolitan Dist. Comm'n*,

*supra* at 55-56. Its purpose is to allow public employers the opportunity to investigate and settle claims and to prevent future claims through notice to executive officers. *Richardson* v. *Dailey*, 424 Mass. 258, 261 (1997), quoting *Lodge* v. *District Attorney for the Suffolk Dist.*, 21 Mass. App. Ct. 277, 283 (1985). Moreover, it is intended to "preserve the stability and effectiveness of government by providing a mechanism which will result in payment of only those claims against governmental entities which are valid, in amounts which are reasonable and not inflated." *Vasys* v. *Metropolitan Dist. Comm'n, supra* at 57.

In resolving this question, we note that decisional law is generally applied *retroactively*, unless doing so would fail to protect the reasonable expectations of parties.[5] *Schrottman* v. *Barnicle*, 386 Mass. 627, 631 (1982). However, in exceptional circumstances, when "determining whether a new rule arising from decisional law should apply *prospectively*, we look at three factors: (1) whether a new principle has been established whose resolution was not clearly foreshadowed; (2) whether retroactive application will further the rule; and (3) whether inequitable results, or injustice or hardships, will be avoided by a holding of nonretroactivity" (emphasis added). *Keller* v. *O'Brien*, 425 Mass. 774, 782 (1997), citing *McIntyre* v. *Associates Fin. Servs. Co. of Mass.*, 367 Mass. 708, 712 (1975).

Applying these principles here, we conclude that our decision in *Morrissey* bringing nuisance claims within the ambit of the Act can, and should, be read as applying the corresponding presentment requirement prospectively to claims accruing more than two years before it issued.[6] The common-law tort of private nuisance has enjoyed great longevity in our jurisprudence, see *Sherman* v. *Fall River Iron Works Co.*, 2 Allen 524, 526 (1861),

---

[5]By contrast, statutes are generally "prospective in their operation, unless an intention that they shall be retrospective appears by necessary implication from their words, context, or objects when considered in the light of the subject matter, the pre-existing state of the law and the effect upon existent rights, remedies and obligations." *Hanscom* v. *Malden & Melrose Gas Light Co.*, 220 Mass. 1, 3 (1914).

[6]Fairness may require that even claims accruing two years or less before *Morrissey* v. *New England Deaconess Ass'n — Abundant Life Communities, Inc.*, 458 Mass. 580 (2010), be exempted from the requirement of presentment, where it was not reasonable for the plaintiffs to have learned of it promptly on the issuance of the decision.

and at no point prior to *Morrissey* had we restricted its application by requiring a plaintiff to timely present his claim to a municipality or the Commonwealth. See *Morash & Sons* v. *Commonwealth, supra* at 613, 619 (where municipality or Commonwealth is owner of or in control of real estate and creates or permits private nuisance to real property of another, it is liable in common-law action just as natural person would be). See also *Taygeta Corp.* v. *Varian Assocs., Inc.,* 436 Mass. 217, 231 (2002), quoting *Doe* v. *New Bedford Hous. Auth.,* 417 Mass. 273, 288 (1994) (private nuisance is actionable when property owner creates, permits, or maintains condition or activity on its property that causes substantial and unreasonable interference with use and enjoyment of property of another). Moreover, given that twenty-three years elapsed between the Appeals Court's decision in *Asiala* v. *Fitchburg, supra,* and our decision in *Morrissey,* during which time we offered no indication that the *Asiala* case strayed from the legislative intent behind the Act, we cannot say that the decision was "clearly foreshadowed." Although retroactive application of our decision in the *Morrissey* case might be expedient, convenience should not trump the patent inequity of denying the plaintiffs the opportunity for relief due to their failure to divine such a dramatic shift in our decisional law.

Nor do we think that expediency was our goal in the *Morrissey* case. Rather, our stated purpose for applying the substantive provisions retroactively was that "[r]etroactive application of our decision furthers the purpose of having a consistent and clearly defined body of law . . . ." *Morrissey, supra* at 592. Given that our intent was to encourage uniformity and to eliminate the "crazy quilt of exceptions to sovereign immunity . . . which courts [had] stitched together" (citations omitted), *Rogers* v. *Metropolitan Dist. Comm'n, supra* at 338-339, it is unclear how applying the presentment requirement retroactively would further that purpose. At its core, the presentment requirement is a procedural stepping stone that plaintiffs must satisfy before seeking remuneration from a public employer. *Richardson* v. *Dailey, supra* at 261. Disallowing the plaintiffs' suits based on their failure to present their claims does not promote homogeneity among the Act's substantive provisions; it would

only invalidate otherwise viable claims on procedural grounds. Such a result would be inconsistent with our statement in the *Morrissey* case that our decision would not cause any "specific hardships or inequities." *Morrissey, supra.* The city's motions to dismiss and for summary judgment on this ground were properly denied.

3. *Applicability of exceptions to liability under the Act.* The Act is not a blanket waiver of protection. It specifically exempts certain categories of conduct that continue to enjoy the protection of sovereign immunity. The city argues that the Shapiros' claims are barred by operation of the exemptions found in G. L. c. 258, § 10 (*b*) and (*j*).

General Laws c. 258, § 10 (*b*) (§ 10 [*b*]), provides a public employer with immunity from "any claim based upon the exercise or . . . the failure to exercise . . . a discretionary function . . . on the part of a public employer . . . whether or not the discretion involved is abused." Analysis under § 10 (*b*) follows a two-prong test. *Harry Stoller & Co.* v. *Lowell*, 412 Mass. 139, 141 (1992). The first inquiry is "whether the governmental actor had any discretion at all as to what course of conduct to follow." *Id.* The second inquiry is "whether the discretion that the actor had is that kind of discretion for which § 10 (*b*) provides immunity from liability." *Id.* The demarcation between the types of functions described in the second prong is guided by our opinions predating the enactment of § 10 (*b*). *Id.* at 141-142. In *Whitney* v. *Worcester*, 373 Mass. 208, 217 (1977) (*Whitney*), we held that the dividing line should be between those functions that "rest on the exercise of judgment and discretion and represent planning and policymaking [for which there would be governmental immunity] and those functions which involve the implementation and execution of such governmental policy or planning [for which there would be no governmental immunity]."

Based on the two-prong test in *Whitney*, the Superior Court judge framed the present issue as "whether the cause of the sewage backup was a failure in planning or a failure in implementing a plan." Based on the fact that the city established a plan "whereby it would allow MDC to increase flow in the City's sewers in exchange for the MDC improving the sewer

system [but that] the city failed to totally and properly implement that plan," the judge concluded that the action was not barred by § 10 (b). We find the judge's analysis persuasive.

As previously described, the study jointly conducted by the city and the MDC in 1996 predicted that sanitary sewer backups would likely occur in residential properties during severe weather conditions unless improvements to the sewer system were made. In light of the report, the city decided it was necessary to upgrade its sewer system. All of the events beginning with the joint study through the decision to upgrade the system are properly characterized as "planning and policymaking." However, the moment the city entered into a contractual arrangement allowing the MDC's sewage to flow into the system in exchange for constructing the necessary improvements by a date certain, the city was charged not with planning or policymaking, but with ensuring the proper implementation by the MDC of its chosen course of action. Accordingly, we affirm the motion judge's conclusion that § 10 (b) does not apply and that the city is not immune from suit.

Before considering the thornier issue whether the "public duty rule" in G. L. c. 258, § 10 (j) (§ 10 [j]), exempts the city from liability, we note that the city did not raise this argument in either proceeding below. Accordingly, the city is not entitled to assert it now. See Cottam v. CVS Pharmacy, 436 Mass. 316, 320 (2002). However, because the issue was fully briefed by the parties and would almost certainly be the subject of an additional interlocutory appeal if we chose not to address the matter, we exercise our discretion and discuss whether the provision is applicable here.

Under § 10 (j), a public employer cannot be held liable for:

> "[A]ny claim based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation, including the violent or tortious conduct of a third person, which is not originally caused by the public employer or any other person acting on behalf of the public employer."

Based on this language the city argues that it cannot be held liable for failing to implement the agreed-on sewer upgrades

because (1) severe weather events were the original cause of the flooding and (2) the MDC was responsible for designing, constructing, and inspecting the sewer improvements, not the city.

In *Brum* v. *Dartmouth*, 428 Mass. 684, 692 (1999), we acknowledged the difficulty of interpreting and applying § 10 (*j*): "To say that § 10 (j) presents an interpretive quagmire would be an understatement." Despite the provision's "convoluted and ambiguous" language, we concluded that its "principal purpose . . . is to preclude liability for failures to prevent or diminish harm, including harm brought about by the wrongful act of a third party." *Brum* v. *Dartmouth, supra* at 692, 696. We also determined that the provision provides "immunity in respect to all consequences *except* where 'the condition or situation' was 'originally caused by the public employer' " (emphasis added). *Id.* at 692. Finally, we interpreted "originally caused" to mean an affirmative act (not a failure to act) by a public employer that creates the condition or situation. *Id.* at 695-696 (citing cases implicitly requiring an affirmative act to satisfy § 10 [*j*]). See *Kent* v. *Commonwealth*, 437 Mass. 312, 318 (2002).

In the *Kent* case, we addressed the question left open by *Brum* v. *Dartmouth, supra,* namely the "nature of the relationship between the affirmative act and the 'condition or situation' that would bring it within the ambit of the 'originally caused' language, thereby extinguishing the Commonwealth's immunity from suit." *Kent* v. *Commonwealth, supra* at 318. In that case, an injured police officer sued the Commonwealth for gross negligence after he was shot by a parolee who had been released by the State parole board. *Id.* at 313-314. In concluding that the Commonwealth was exempt under § 10 (*j*), we held that in order for a public employer's affirmative act to be the " 'original cause' of a 'condition or situation' that results in harmful consequences to another, . . . the act must have *materially contributed* to creating the specific 'condition or situation' that resulted in the harm" (emphasis added). *Kent* v. *Commonwealth, supra* at 319.

Here, the action of the city permitting MDC effluent to flow into the city's sewer system materially contributed to its overloading and exposed homeowners to a known risk. Having created

this condition, the city "was bound, as any other person would be, to act reasonably." *Bonnie W.* v. *Commonwealth*, 419 Mass. 122, 127 (1994). In failing to take steps to ensure that the MDC made the necessary improvements, and allowing the MDC effluent to flow into the city's sewer system without requiring their completion, the city did not act reasonably, and may be liable for negligence.

*Conclusion.* In sum, we conclude that the plaintiffs' suits are not barred by the presentment requirement of G. L. c. 258, § 4. Further, the plaintiffs' suits are not foreclosed by operation of the exemptions to liability under G. L. c. 258, § 10 (*b*) and (*j*). In no. SJC-11118, the order denying the city's motion for summary judgment and motion to dismiss is affirmed, and the case is remanded to the Superior Court for further proceedings consistent with this opinion. In no. SJC-11119, the order denying the city's motion for reconsideration of the denial, in part, of its motion for summary judgment is affirmed, and the case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*