NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11816

JOHN W. MURRAY  vs.  TOWN OF HUDSON & others.[1]


Worcester.     April 9, 2015. - August 3, 2015.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk, &
Hines, JJ.


Municipal Corporations, Liability for tort, Parks, Notice to
     municipality, Governmental immunity.  Negligence,
     Municipality, One owning or controlling real estate,
     Athletics.  Massachusetts Tort Claims Act.  Parks and
     Parkways.  Governmental Immunity.  Notice, Claim under
     Massachusetts Tort Claims Act.  Practice, Civil,
     Presentment of claim under Massachusetts Tort Claims Act.



     Civil action commenced in the Superior Court Department on
April 24, 2013.

     The case was heard by John S. McCann, J., on a motion for
summary judgment.

     The Supreme Judicial Court on its own initiative
transferred the case from the Appeals Court.


     Brian W. Murray for the plaintiff.
     John J. Davis for town of Hudson.

---

[1] Alteris Insurance Services, Inc. (Alteris), and Argonaut
Insurance Company (Argonaut).  In June, 2014, a stipulation of
dismissal with prejudice was entered relative to the plaintiff's
claims against Alteris and Argonaut.

Charlotte E. Glinka, Thomas R. Murphy, Elizabeth S. Dillon, & John A. Finbury, for Massachusetts Academy of Trial Attorneys, amicus curiae, submitted a brief.

GANTS, C.J.  During a varsity baseball game between two high school teams at a public park in the town of Hudson (town), the plaintiff, a ballplayer with the visiting team, seriously injured his knee while warming up in the bullpen.  The plaintiff filed suit in the Superior Court against the town under the Massachusetts Tort Claims Act, G. L. c. 258 (act), alleging that his injury was caused by the town's negligence and its wanton and reckless conduct in allowing the visiting team to use a dangerous bullpen.  The judge allowed the town's motion for summary judgment, concluding that the evidence did not support a finding of wanton or reckless conduct, and that the plaintiff's negligence claim was barred by the recreational use statute, G. L. c. 21, § 17C, where the injury occurred on a baseball field owned by the town that it allowed the public to use without a fee, and where the town had no "special relationship" with the plaintiff because he was a student from a visiting high school rather than the town's own high school.  We conclude that the town could be found liable for negligence despite the recreational use statute because, where a town's school invites another town's school to play an athletic match on a town field, the town owes the visiting student-athletes the same duty to

provide a reasonably safe playing field that it owes to its own students. We also conclude that there was no failure of presentment under § 4 of the act, and that it cannot be determined until trial whether liability is barred by the discretionary function exemption in § 10(b) of the act. We therefore reverse the allowance of the motion for summary judgment and remand the case to the Superior Court for trial.[2]

Background. We recite the undisputed facts in the summary judgment record. Hudson High School (Hudson) hosted a varsity baseball game against Milford High School (Milford) on the night of May 15, 2010.[3] The game was played at Riverside Park, a public park in the town maintained by the town's department of public works.[4] The plaintiff, a member of the visiting Milford team, alleges as follows:

> "During the game, [the plaintiff] was asked by his coach to warm up as a pitcher and he went to a designated 'bullpen' area located behind the third base dugout. The 'bullpen' area consisted of a[n] . . . area with wooden landscape timbers or berms enclosing the pitching rubber approximately [eighty-four] inches apart. During the

[2] We acknowledge the amicus brief submitted by the Massachusetts Academy of Trial Attorneys.

[3] Hudson High School and Milford High School are both members of the Massachusetts Interscholastic Athletic Association (MIAA). The baseball game on May 15, 2010, was an interscholastic event governed by the rules of the MIAA.

[4] The town of Hudson (town) does not charge a fee for the use of Riverside Park, and does not receive any portion of any annual athletic fee that the plaintiff pays Milford High School.

> course of his warm-ups, [the plaintiff]'s left foot on the follow through of a pitch struck the wooden landscape timber or berm located to his right. The uneven landing resulted in a twisting of [the plaintiff]'s left knee and caused him to fall to the ground and experience immediate pain. [The plaintiff] was caused to suffer a badly torn meniscus in his left knee which required two (2) surgical procedures as well as other medical and physical therapy treatments to repair and heal."[5]

The bullpen was designed and constructed by a former town employee, and was maintained by the town and by student athletes.

As required under § 4 of the act, the plaintiff sent a letter to the town board of selectmen on December 10, 2010, reciting the above-quoted allegations, notifying them that he was asserting a claim against the town, and making demand of $100,000 for his "injuries, pain and suffering and medical expenses." The letter alleged that the town had "engaged in willful, wanton or reckless conduct," and had committed a breach of its "duty of reasonable care to visiting high school baseball players and was negligent in allowing them to utilize the . . . bullpen area." The letter further alleged that the "bullpen area" was "inherently dangerous" in three ways:

> "First, the width of approximately [eighty-four] inches between the wooden timbers that enclose the pitching

---

[5] During his deposition testimony, the plaintiff stated that the poor grading of the dirt forced him to start his pitching motion on the far right side of the rubber. He also stated that he had never warmed up in a bullpen with exposed wooden timbers before.

mound is much too narrow an area, particularly when compared to the field's actual pitching mound which is approximately 140 inches across in the landing area and 203 inches in diameter at the pitching rubber.

"Secondly, the use of wooden timbers at all in this type of athletic setting, i.e. a pitching mound, is extremely dangerous. It invites exactly the kind of injury which occurred in this instance by creating an uneven landing spot for pitchers.

"Third, the area itself is poorly lit. As stated, [the plaintiff] was injured during a night game. The poor lighting prevented him from viewing clearly, competently and thoroughly the condition of the warm up mound, particularly the type, size and locations of the wooden berms."

After the town's insurer denied the plaintiff's claim, the plaintiff brought this action, claiming that the town had committed a breach of its "duty of reasonable care" and "engaged in willful, wanton and reckless conduct" by "allowing a 'bullpen' area to be accessed by [the plaintiff] that was poorly constructed, maintained and illuminated, all without any posted warnings." After the town's motion for summary judgment was allowed by the judge, the plaintiff appealed, and we transferred the case to this court on our own motion.

Discussion. 1. Recreational use statute. Murray challenges the judge's ruling that the recreational use statute bars his negligence claim against the town. The recreational use statute, G. L. c. 21, § 17C, was enacted in 1972 "to encourage landowners to permit broad, public, free use of land for recreational purposes by limiting their obligations to

lawful visitors under the common law." Ali v. Boston, 441 Mass. 233, 238 (2004). General Laws c. 21, § 17C (a), provides, in relevant part:

> "Any person having an interest in land including the structures, buildings, and equipment attached to the land . . . who lawfully permits the public to use such land for recreational . . . purposes without imposing a charge or fee therefor . . . shall not be liable for personal injuries . . . sustained by such members of the public, including without limitation a minor, while on said land in the absence of wilful, wanton, or reckless conduct by such person."

The statute makes recreational users a "discrete subgroup of lawful visitors owed only the standard of care applicable to trespassers: that is, landowners must refrain from wilful, wanton, or reckless conduct as to their safety." Ali, supra at 237. Because landowners do not owe recreational users the reasonable duty of care owed to other lawful visitors, they may not be found liable to them for ordinary negligence. See id. Government landowners that provide free access to their land for public use are protected from liability by G. L. c. 21, § 17C, to the same extent as private landowners. See G. L. c. 21, § 17C (b) (including "any governmental body, agency or instrumentality" within meaning of term "person").[6] The town is thus a proper party to invoke the recreational use statute.

_____

[6] The definition of "person" under the recreational use statute was added in 1998 to G. L. c. 21, § 17C. St. 1998, c. 268. But even before the statute made clear that "any person having an interest in land" included a governmental body, we had

The original legislative purpose of the recreational use statute was to encourage landowners to give the public free access to their land for recreational purposes by protecting them from negligence claims if a member of the public were to be injured on the land.[7]  It was not intended to diminish the duty of care that a school owes its students to provide reasonably safe school premises for school-related activities, including interscholastic sports.  "Personal injury from defective premises . . . is not a risk that schoolchildren should, as matter of public policy, be required to run in return for the

_____

held that government landowners were protected from negligence liability by the recreational use statute, relying on the Massachusetts Tort Claims Act, G. L. c. 258, § 2, which expressly provides that government entities "shall be liable . . . in the same manner and to the same extent as a private individual under like circumstances."  See Anderson v. Springfield, 406 Mass. 632, 634 (1990).

[7] The recreational use statute, which also is called the public use statute, was enacted following the commission of a report by the Legislature, published in 1967, which found that "the general public was increasingly pursuing 'participant forms' of outdoor recreation (e.g., boating, camping, and hiking), creating a need for more land than was then available for public recreational use," and which also found that "the need for additional space would not be met unless private landowners were persuaded to open their land to the recreating public" despite their "fear[s] that they would incur liability for injured recreationalists."  Ali v. Boston, 441 Mass. 233, 235-236 (2004), citing 1967 Senate Doc. No. 1136, at 15-16.  As originally enacted, the recreational use statute only extended immunity to landowners who open their land to the public for recreational purposes.  See St. 1972, c. 575.  It has been amended to encompass landowners who open their land to the public for other enumerated public purposes, including educational purposes.  See St. 1998, c. 268.

benefit of a public education." Whitney v. Worcester, 373 Mass. 208, 223 (1977). See Alter v. Newton, 35 Mass. App. Ct. 142, 145 (1993) ("Because of the relationship between a school and its students, the city had a duty of care to the plaintiff to provide her with reasonably safe school premises").[8] Therefore, the recreational use statute does not alter the standard of care that a school owes its own students arising from its special relationship with its students, and would not protect the town from liability for negligence claims brought against it by students enrolled in its own public schools for injuries sustained while the students were engaged in school-related activities. See id. at 149, quoting Bauer v. Minidoka Sch. Dist. No. 331, 116 Idaho 586, 588-589 (1989) ("'if the recreational use statute were applied to injuries children suffered while on school premises as students,' the special relationship of the school to its students would be substantially impaired").[9] Cf. Wilkins v. Haverhill, 468 Mass.

---

[8] See also Driscoll v. Trustees of Milton Academy, 70 Mass. App. Ct. 285, 304 (2007) (Mills, J., concurring in part and dissenting in part) ("The existence of a duty that secondary schools owe to minor children is further supported by the special protections that both the courts and the Legislature have long accorded to minors, and by the doctrine of in loco parentis" [footnote omitted]).

[9] See also McIntosh v. Omaha Pub. Sch., 249 Neb. 529, 538 (1996), appeal after remand, 254 Neb. 641 (1998), overruled on other grounds by Bronsen v. Dawes County, 272 Neb. 320 (2006) ("Clearly, a student participating in a clinic sponsored by his

86, 91 n.9 (2014), quoting Ali, 441 Mass. at 236  (because municipalities need no "encouragement to open their schools for parent-teacher conferences," applying recreational use statute to parent's slip and fall on ice in school walkway on parent-teacher night "would upend the balance that the Legislature intended to strike 'between encouraging public access to private land and protecting landowners from liability for injuries'").

If the baseball game between the Hudson and Milford teams had been played on a field on the Hudson grounds, it would be plain that the town owed a duty to its students to maintain the field in a reasonably safe condition.  That duty remains where, as here, Hudson chooses to play its home interscholastic baseball games in a town park off the high school grounds.

school's athletic program does not fall under the category of recreational use of land open to members of the public without charge"); M.M. v. Fargo Pub. Sch. Dist. No. 1, 783 N.W.2d 806, 815 (N.D. 2010), appeal after remand, 815 N.W.2d 273 (N.D. 2012) ("we do not believe the Legislature intended to relieve school districts of duties of care owed their students, who are mandated by law to attend their schools, based on a statutory scheme designed to encourage landowners to make available to the public land and water areas for recreational purposes"); Auman v. School Dist. of Stanley-Boyd, 248 Wis. 2d 548, 554, 563-564 (2001) (where plaintiff was injured sliding down snow pile on school playground during recess, "[h]er participation in what is a 'recreational activity' in common parlance . . . does not convert the educational purpose of school attendance into a recreational activity under the [recreational immunity] statute," and "[n]o reason exists to immunize school districts from liability for not exercising reasonable care in the maintenance of school facilities or supervision of schoolchildren during regular school hours").

The town does not dispute that, if a Hudson pitcher had been injured warming up in the home team bullpen, the recreational use statute would not shield the town from liability for negligence because of the special relationship the town has with its own students. But the town argues, and the judge concluded, that because the plaintiff was a pitcher on the visiting team and not a student at Hudson, there was no "special relationship" between the plaintiff and the town "that stands in the way of the normal operation of the recreational use statute." The consequence of such a ruling would be that the town owes a duty of care to maintain a reasonably safe bullpen for the home team, but need only avoid wilful, wanton, or reckless conduct in maintaining the visiting team's bullpen. This not only would be poor sportsmanship; it would be bad law.

Hudson has chosen to offer interscholastic baseball as a school-related activity for its students, but it can do so only if other schools agree to compete against it; otherwise, Hudson high school could offer only intramural baseball. Where the town, as it did here, invites a school like Milford to play a baseball game on the town's home field, thereby enabling Hudson students to play interscholastic baseball, the town owes the students on the visiting team the same duty of care to provide a reasonably safe playing field that it owes its own students. Where the recreational use statute does not shield the town from

liability for negligence resulting in injuries to its own public school students, the statute also does not shield the town from liability for negligence resulting in injuries to visiting student-athletes. See Morales v. Johnston, 895 A.2d 721, 724, 731 (R.I. 2006) (despite recreational use statute, town owed visiting student-athlete "a special duty of care to protect her from a dangerous condition on the athletic field"). Cf. Avila v. Citrus Community College Dist., 38 Cal. 4th 148, 161-162 (2006) (despite doctrine of assumption of risk, "the host school and its agents owe a duty to home and visiting players alike to . . . not increase the risks inherent in the sport").

The judge rested his ruling in part on Kavanagh v. Trustees of Boston Univ., 440 Mass. 195, 196 (2003), where a Boston University basketball player during an intercollegiate basketball game punched and broke the nose of an opposing player. In that case, we affirmed the grant of summary judgment in favor of Boston University, noting that the university owed no duty to protect the plaintiff from third-party conduct absent a "special relationship" between the plaintiff and Boston University, and concluding that a college's "special relationship" with its own students does not extend to student-athletes from a different college. Id. at 201-203. We need not consider here whether to revisit that precedent, which did not involve the recreational use statute, because the issue in that

case was whether the university was negligent in failing to protect the plaintiff from third-party conduct, not whether the university was negligent in failing reasonably to provide a safe basketball court. Had the plaintiff in that case been injured by falling on an unreasonably unsafe basketball floor, our analysis might have been quite different.

For these reasons, we conclude that, despite the recreational use statute, the town may be found liable for negligence in providing the pitchers from the opposing team with a bullpen that was not reasonably safe.[10]

2. Massachusetts Tort Claims Act. The town also argues that the plaintiff did not comply with the act's presentment requirement, G. L. c. 258, § 4, because the plaintiff's presentment letter to the town raised only a "negligent design" theory, and did not also raise the "negligent maintenance"

---

[10] The plaintiff also argues that the recreational use statute does not bar his claim because, when the game was being played, the ballfield was open only to the two high school baseball teams and not to the general public. We reject this argument. Where a landowner makes available its land for use by the general public, the recreational use statute will not cease to protect the landowner simply because the landowner, without charging a fee, allows members of the public to reserve a particular field at a particular date and time to avoid conflicts over who may use that field. Contrast Marcus v. Newton, 462 Mass. 148, 156-157 (2012) (recreational use statute did not apply where softball league paid fee to town to reserve field, and where there was no evidence in summary judgment record that fee was used to reimburse town for marginal costs directly attributable to league's use of field).

theory alleged in his complaint.  Further, the town argues that it is not liable for "negligent design," because the design of the bullpen was a "discretionary function" falling within the act's discretionary function exception, G. L. c. 258, § 10 (b). The motion judge did not reach either of these arguments. Because our review of a motion for summary judgment is de novo, see Roman v. Trustees of Tufts College, 461 Mass. 707, 711 (2012), and because we may affirm an allowance of summary judgment on grounds other than those reached by the judge, see id., we address these arguments here.

Under the act, G. L. c. 258, § 4, "[a] civil action shall not be instituted against a public employer on a claim for damages [under the act] unless the claimant shall have first presented his claim in writing to the executive officer of such public employer . . . ."  "This strict presentment requirement is a statutory prerequisite for recovery under the [a]ct." Shapiro v. Worcester, 464 Mass. 261, 267 (2013).  Its purpose is to "ensure[] that the responsible public official receives notice of the claim so that the official can investigate to determine whether or not a claim is valid, preclude payment of inflated or nonmeritorious claims, settle valid claims expeditiously, and take steps to ensure that similar claims will not be brought in the future."  Richardson v. Dailey, 424 Mass. 258, 261 (1997), quoting Lodge v. District Attorney for the

Suffolk Dist., 21 Mass. App. Ct. 277, 283 (1985).  See Shapiro,
supra at 268.  See also Estate of Gavin v. Tewksbury State
Hosp., 468 Mass. 123, 131-135 (2014).

A presentment letter should be precise in identifying the
legal basis of a plaintiff's claim, but it is adequate if it
sets forth sufficient facts from which public officials
reasonably can discern the legal basis of the claim, and
determine whether it states a claim for which damages may be
recovered under the act.  See Gilmore v. Commonwealth, 417 Mass.
718, 723 (1994) ("While a presentment letter should be precise
in identifying the legal basis of a plaintiff's claim, [the
plaintiff's] letters . . . were not so obscure that educated
public officials should find themselves baffled or misled with
respect to" claim being asserted).  Here, the presentment letter
identified the legal basis of the plaintiff's claims as
negligence and wilful, wanton, or reckless conduct; it did not
characterize the specific theory of negligence, and did not use
the terms "negligent design" or "negligent maintenance."  The
letter claimed that the town was negligent in allowing the
visiting players to use a bullpen that was "inherently
dangerous," and described what made the bullpen dangerous,
noting specifically the width of the pitching mound in the
visiting team's bullpen, the use of wooden "timbers" to enclose

the pitching mound, and the poor quality of lighting.[11]  It is
not apparent from these allegations in the presentment letter
that liability in this case would rest solely on the "design" of
the bullpen.  We conclude that the presentment letter provided
the town with adequate notice of the circumstances of the
plaintiff's negligence claim -- without limitation to any
specific theory of negligence -- and that the town reasonably
could investigate those circumstances and determine whether the
town might be liable on the claim under the act.  See McAllister
v. Boston Hous. Auth., 429 Mass. 300, 305 n.7 (1999), overruled
on other grounds by Sheehan v. Weaver, 467 Mass. 734 (2014)
(where presentment letter only explicitly raised one of
plaintiff's theories of liability, presentment requirement was
satisfied with respect to all theories because "executive
officer had the opportunity to investigate the circumstances of
each claim, as all theories of liability argued by the plaintiff
were based on the same facts").

Having concluded that the plaintiff's presentment letter
does not limit the plaintiff to a "negligent design" theory, we
also conclude that the town is not entitled to summary judgment
based on its claim that the town is immune from liability on a
"negligent design" theory under the act's discretionary function

---

[11] The letter noted that there were "perhaps more" reasons
why the bullpen was dangerous.

exception.[12]  It is not apparent from the summary judgment record

that the plaintiff intends to rest solely on that theory.  Nor

is it apparent from the summary judgment record that the width

of the mound and the enclosure of the mound by wooden "timbers"

are the type of design decisions that fall within the

discretionary function exception.  See Barnett v. Lynn, 433

Mass. 662, 664 (2001), quoting Patrazza v. Commonwealth, 398

Mass. 464, 467 (1986) ("Generally, such discretionary conduct is

'characterized by the high degree of discretion and judgment

involved in weighing alternatives and making choices with

respect to public policy and planning'").  The issue whether

some or all of the plaintiff's claims come within the

discretionary function exception cannot be resolved until the

judge can determine whether the plaintiff rests liability on a

negligent design theory and, if so, whether the decisions

concerning the design of the bullpen constitute the type of

discretionary policy-making and planning by government officials

that is protected by sovereign immunity.  See Greenwood v.

Easton, 444 Mass. 467, 470 (2005) ("Deciding whether particular

discretionary acts involve policy making or planning depends on

---

[12] The discretionary function exception, G. L. c. 258, § 10 (b), provides that a public employer shall not be liable for "any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a public employer or public employee, acting within the scope of his office or employment, whether or not the discretion involved is abused."

the specific facts of each case"); <u>Alter</u>, 35 Mass. App. Ct. at 148 ("the application of the discretionary function exception is a question of law for the court").

 <u>Conclusion</u>. We reverse the order granting summary judgment in favor of the defendants, and remand the case to the Superior Court for trial.

<u>So ordered</u>.